# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| M.O., by his parents and next friends, | ) | |
| CHRIS and LINDA ONDROVIC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-175-TS |
| | ) | |
| INDIANA DEPARTMENT OF EDUCATION, | ) | |
| INDIANA BOARD OF EDUCATION, INDIANA | ) | |
| BOARD OF SPECIAL EDUCATION APPEALS, | ) | |
| DUNELAND SCHOOL CORPORATION, and | ) | |
| PORTER COUNTY EDUCATION SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION and ORDER

Before the Court is a Motion to Dismiss State Defendants [DE 15], filed on July 31,

2007. The three State Defendants seek dismissal of all claims against them and ask to be

dismissed from this Individuals with Disabilities Education Act (IDEA) lawsuit.

## BACKGROUND

### A.    Facts and Procedural Background

The following facts are taken from the Plaintiffs' First Amended Complaint [DE 10], that

document's two exhibits (the administrative record of the case [DE 10-2] and the record of a

complaint and investigation [DE 10-3]), and the Plaintiff's Response to State Defendants'

Motion to Dismiss [DE 26].

The Plaintiffs are student M.O. and his parents. The Defendants are: Duneland School

Corporation and Porter County Education Services (collectively, the Local Defendants); and the

Indiana Department of Education (DOE), Indiana Board of Education (BOE), and the Indiana

Board of Special Education Appeals (BSEA) (collectively, the State Defendants).

Plaintiff M.O., who was fifteen years old when this lawsuit was filed, suffers from medical problems and has had difficulty at school. He has suffered from headaches, including migraines, and depression. The main event leading up to the filing of this lawsuit was an altercation between Plaintiff M.O., a tenth grader at the time, and another student on September 19, 2005, at Chesterton High School. As a result, the school proposed to expel Plaintiff M.O.

His parents said M.O. had been diagnosed with depressive disorder and oppositional defiant disorder. On September 29, 2006, they requested a due process hearing against Duneland School Corporation and Porter County Education Services (the Local Defendants). The parents claimed, among other things, that M.O. had not received the appropriate evaluation for his problems and that he was being denied a free appropriate public education (FAPE).

Joseph McKinney was appointed as the Independent Hearing Officer (IHO) to conduct an expedited hearing, which he held on October 5. The issue was "whether the school knew or should have known at the time the Student engaged in behavior that violated the rules of the School that the Student was a Student with a disability before the behavior that precipitated the disciplinary action occurred." (Ind. BSEA Decision, DE 10-2 at 3–4.) At that hearing or shortly after, IHO McKinney ruled for Plaintiff M.O., "finding that the School knew or should have known the Student had a disability." (*Id.* at 4.) The IHO ordered that the school provide homebound services.

The Local Defendants initiated homebound services, though not necessarily to the satisfaction of Plaintiff M.O.'s parents. The Local Defendants also had Plaintiff M.O. evaluated. The administrative process continued through the rest of the year and into 2007, and a number of

additional issues were raised about Plaintiff M.O.'s education. There were delays in hearings and disputes over access to records. The IHO made his final decision on February 26, 2007, concluding that: the school's proposed Individualized Education Plan (IEP) was not appropriate; the student remained a danger to himself and others; he was not ready to return to school; the appropriate placement for the student is a homebound program and not what the school proposed; the school violated FAPE by not preventing discipline for manifestations of the student's disabilities; the school should reimburse the family for an independent education evaluation; and the student was entitled to compensatory education services. (*Id.* at 15.)

While this process was ongoing, the Plaintiffs filed a complaint on April 30, 2007, with Defendant State Department of Education about the services Plaintiff M.O. was receiving. The Plaintiffs accused the School Defendants of refusing to implement the IHO's orders, specifically by failing to pay for the student's online high school program, an independent evaluation and related mileage costs, and the student's visits to a clinical psychologist and the related mileage costs. (Admin. Compl. Rpt., DE 10-2 at 2.) Defendant Department of Education found that the Local Defendants had sufficiently reimbursed the Plaintiffs for costs they incurred and "require[d] no corrective action." (*Id.* at 3.)

The Local Defendants appealed the IHO's decision to the Board of Special Education Appeals (BSEA), one of the State Defendants. The BSEA in May 2007 reversed the IHO and ruled for the Local Defendants and against Plaintiff M.O. The BSEA, among other conclusions and determinations: ordered that Plaintiff M.O. would have "full-time placement in the school" after the Case Conference Committee (CCC) met to devise a plan consistent with the IEP of October 20, 2006; and ruled that the school did not have to pay for the individual evaluation the

parents had obtained or for the services of private psychologists. (*Id.* at 30.) It also ruled that the IHO had made a number of errors regarding: what matters were and were not expedited; evidentiary and admissibility decisions; and requests for extensions of time. In sum, the BSEA determined that

> the IHO's written decision does contain factual and legal determinations that are not supported by the record or by law. In some instances, relevant facts are ignored while irrelevant facts are not. In others, legal standards are employed either incorrectly or not at all. There is little support for the IHO's legal conclusions and no support for his Orders.

(*Id.* at 24.)

## B.     Complaint Allegations

The claims against the State Defendants are in paragraphs 45 through 54 in the amended complaint, as well as in earlier paragraphs 7, 10–12, 37, and 42, by incorporation (Am. Compl. ¶ 43). The claims can be grouped into several categories. First, the Plaintiffs claim that the BSEA erred in its decision and in the way it reached that decision. (*Id.* ¶¶ 37, 47, 49–51). The Plaintiffs allege that the BSEA: did not apply the required legal standards for reversing an IHO and improperly reversed the IHO's factual determinations (*id.* ¶ 47); erred in presuming that the School Defendants' due process rights "may override" the student's due process rights (*id.* ¶ 49); and erred by not addressing the failure of the alternative school to have a special education teacher (*id.* ¶ 50). The Plaintiffs also make the general allegation that the BSEA "made certain specific factual errors or deliberation misconstructions of the evidence." (*Id.* ¶ 37.)

Second, the Plaintiffs in paragraphs 10–12 and 48 make claims of systemic problems with the administrative hearing system. They state that the BSEA: "routinely reverses hearing officer decisions that are favorable to parents, and finds in favor of school corporations," (*id.*

¶¶ 10, 11) and, as a part of this, overrules IHO credibility determinations and IHO decisions that are supported by substantial evidence in the record. (*Id.*) The Plaintiffs also allege that "State Defendants have failed to ensure an administrative hearing system that comports with the IDEA's requirements" in light of the errors that the BSEA attributed to the IHO. (*Id.* ¶ 48.)

Third, paragraphs 7, 45, and 46 make general allegations that the State Defendants failed to ensure that the School Defendants complied with the IDEA and Article 7 of the Indiana Administrative Code, specifically, the "child find" requirements and the obligation to conduct appropriate evaluations of children, (*id.* ¶¶ 45, 46), "particularly students with unidentified needs falling within the category of 'Other Health Impairment' and 'Emotional Disturbance.'" (*Id.* ¶ 7.) The Plaintiffs also allege that the State Defendants knew or should have known that staff (presumably of School Defendants) were "not trained to recognize the need to conduct full special education evaluations of a student reporting severe migraines and depression/Opposition Defiant Disorder." (*Id.*) The result of these failures is that Plaintiff M.O. was not identified as a student with special education needs until he was age 15 "and on the verge of expulsion." (*Id.*) The Plaintiffs also allege that the State Defendants are violating the IDEA because they are not enforcing the order the BSEA issued or requiring the School Defendants to obey two specific commands. (*Id.* ¶ 42.) Related to this, the Plaintiffs allege that the existing IEP for Plaintiff M.O. is not current as required. (*Id.*)

Fourth, the Plaintiffs make several miscellaneous claims in paragraphs 9, 12, 29–33, 35, and 53–54. They claim that the general counsel for the Indiana Department of Education exceeded his authority, presumably by sending or distributing the BSEA decision (*see* Am. Compl. ¶¶ 35, 53, DE 10; Am Compl. Ex. A at 1, DE 10-2.) They also allege that the "BSEA

decision lacks sufficient indices that each of the panel members of the BSEA fully examined the entire hearing record as required by the IDEA." (Am. Compl. ¶ 54.) They state that the BSEA exceeded its authority by granting more time for the Local Defendants to appeal the IHO ruling. (*Id.* ¶¶ 29–33, 52.) They claim that the BSEA is unable or unwilling to judge the credibility of witnesses who have testified at the initial due process hearing. (*Id.* ¶ 9.) Last, the Plaintiffs allege that the BSEA does not allow itself or other State Defendants to be named as parties in the due process hearings, making it futile to attempt to do so. (*Id.* ¶ 12.)

## DISCUSSION

### A. Standard of Review

The Defendants argue that this Court lacks subject matter jurisdiction over the claims that the Plaintiffs did not first present to the IHO or the BSEA. However, the IDEA's exhaustion requirement is a claims-processing rule that does not impact the classes of cases this Court can consider. *Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 532–33 (7th Cir. 2006) (citing the Supreme Court's reminder in *Eberhart v. United States*, 546 U.S. 12, 16 (2005), that "[c]larity would be facilitated . . . if courts and litigants used the label 'jurisdiction' not for claims-processing rules, but only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the person (personal jurisdiction) falling within a court's adjudicatory authority"). Thus, it would not be proper to analyze the Defendants' motion under Rule 12(b)(1). *Id.* at 533 (holding that district court should not have used Rule 12(b)(1) to analyze whether failure to exhaust administrative remedies warranted dismissal of IDEA claims). In fact, a failure to exhaust administrative remedies is normally an affirmative defense. *Id.*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and not the merits of the suit. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). The court presumes all well-pleaded allegations to be true and views them in the light most favorable to the plaintiff, and accepts as true all reasonable inferences to be drawn from the allegations. *Whirlpool Fin. Corp. v. GN Holdings, Inc.*, 67 F.3d 605, 608 (7th Cir. 1995). In order to prevail, the defendant must demonstrate that "the plaintiff's claim, as set forth by the complaint, is without legal consequence." *Gomez v. Ill. State Bd. of Educ.*, 811 F.2d 1030, 1039 (7th Cir. 1987). Under the Federal Rules of Civil Procedure the plaintiff need only "set out in [his] complaint a short and plain statement of the claim that will provide the defendant with fair notice of the claim" *Scott v. City of Chi.,* 195 F.3d 950, 951 (7th Cir. 1999), and the "grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007). Fed. R. Civ. P. 8(a). The complaint must provide more than labels and conclusions, a formulaic recitation of the elements of a cause of action, or facts that do not raise a right to relief above the speculative level. *Bell Atl. Corp.*, 127 S. Ct. at 1964–65. The court may consider all allegations made in the complaint as well as any attachments accompanying the complaint. Fed. R. Civ. P. 10(c).

## B. IDEA Background

The IDEA is a funding statute that allows the federal government to provide financial assistance to states for the education of children with disabilities. To receive the financial aid, a state must meet certain prerequisites including providing procedural safeguards to protect the children's rights. 20 U.S.C. § 1415(a) (mandating that any agency "that receives assistance under

this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies"). "The IDEA does not require a specific procedural format, and a state may utilize any procedural structure as long as it meets the minimum federal standards." *Bray v. Hobart City Sch. Corp.*, 818 F. Supp. 1226, 1230 (N.D. Ind. 1993).

> This process consists of, first, the presentation of a complaint, 20 U.S.C.
> § 1415(b)(6); second, an impartial due process hearing before an independent
> hearing officer that is conducted by either the state or the local educational
> agency as determined by state law or the state agency, 20 U.S.C. § 1415(f)(1)(A)
> and (f)(3); third, depending on the nature of the particular state's due-process
> hearing structure, an appeal to the state education authority, 20 U.S.C. §
> 1415(g)(1); and, finally, a civil action for judicial review and determination, 20
> U.S.C. § 1415(i). A reviewing court shall receive the administrative record, shall
> hear additional evidence on request of any party, and, based on a preponderance
> of the evidence, shall grant such relief as it determines is appropriate. 20 U.S.C. §
> 1415(i)(2)(c).

*L.B. ex rel. Benjamin v. Greater Clark County Schs.*, 458 F. Supp. 2d 845, 849 (S.D. Ind. 2006).

Because the State of Indiana has elected to receive federal funds under the IDEA, it has created procedures to implement the IDEA through the administrative rules found at 511 Ind. Admin. Code 7-30-1 *et seq.*

> Any individual, group of individuals, agency, or organization may file a
> complaint alleging a violation of federal or state laws applying to special
> education programs. 511 IAC 7-30-2. Indiana additionally requires its division of
> special education to investigate complaints and order corrective action. 511 IAC
> 7-30-2(c)–(j). A parent, public agency, or the state educational agency may
> initiate a due process hearing whenever a dispute arises concerning the provision
> of special education to a student. 511 IAC 7-30-3. Any party to a due-process
> hearing may appeal the hearing officer's decision to the Board of Special
> Education Appeals ("BSEA") which applies a deferential standard of review: the
> BSEA determines only whether the decision is arbitrary or capricious, an abuse of
> discretion, unsupported by substantial evidence, or contrary to law or established
> procedure. 511 IAC 7-30-4. Dissatisfied parties may file a civil action for judicial

review of the BSEA's decision. 511 IAC 7-30-4(n) and (o).

*L.B. ex rel. Benjamin*, 458 F. Supp. 2d at 849 (footnotes omitted). Relevant to this case, the statute also requires states, as a condition of receiving federal funds, to establish a "child find" system that identifies, locates, and evaluates children with disabilities and that determines "which children with disabilities are currently receiving needed special education and related services." 20 U.S.C. § 1412(a)(3)(A). *See also* 511 Ind. Admin. Code § 7-19-1(b), (l), (r).

The final step of the procedure, judicial review, is ordinarily available only after the student or parent exhausts administrative remedies. 20 U.S.C. § 1415(i)(2), (l); *Honig v. Doe*, 484 U.S. 305, 326–27 (1988). The Seventh Circuit "has described the exhaustion requirement found in the IDEA as a claims-processing rule, pointing out that 'lack of exhaustion usually is waivable, as lack of jurisdiction is not.'" *Mosely v. Bd. of Educ. of City of Chi.*, 434 F.3d 527, 533 (7th Cir. 2006) (quoting *Charlie F. v. Bd. of Educ. of Skokie Sch. Dist. 68*, 98 F.3d 989, 991 (7th Cir. 1996)). One result is that such motions should not be decided under Rule 12(b)(1), as the State Defendants have urged, but under Rule 12(b)(6). *Id.*

However, the exhaustion requirement is not absolute and is considered futile and excused where: the administrative remedy would be inadequate, the school has adopted a policy or practice of generalized applicability that is contrary to the IDEA, or the plaintiff is making systemic allegations of IDEA violations. *Honig*, 484 U.S. at 327; *McQueen ex rel. McQueen Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 875 (10th Cir. 2007); *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303–04 (9th Cir. 1992). These exceptions often overlap, and courts often find that exhaustion is futile because of the presence of one or more of the other exceptions. *See, e.g.*, *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir.

2008) (combining the exceptions when it stated that "the exhaustion requirement does not apply when pursuit of the administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury") (internal quotations omitted); *Bray v. Hobart City Sch. Corp.*, 818 F. Supp. 1226, 1233 (N.D. Ind. 1993) (ruling that exhaustion would be futile because the Indiana Administrative Code did not prove an adequate remedy to the allegations of systemic violations of the IDEA).

An example of the first exception is where a plaintiff has alleged injuries that could not be addressed by the IDEA's procedures and remedies, such as an injury that demands relief in the form of damages. *Charlie F.*, 98 F.3d at 991–93. *See also Padilla v. Sch. Dist. No. 1*, 233 F.3d 1268, 1274 (10th Cir. 2000) (plaintiff sought damages for a "fractured skull and other physical injuries she suffered allegedly as a result of the district and board of educations purported" violations of law) (citing *Charlie F.*, 98 F.3d at 992–93).

An example of the second exception is when "a plaintiff's challenge to a policy of general applicability 'raise[s] only questions of law, thereby rendering agency expertise and the factual development of an administrative record less important.'" *McQueen*, 488 F.3d at 875 (quoting *Ass'n for Comty. Living in Colo. v. Romer*, 992 F.2d 1040, 1044 (10th Cir. 1993)). The court in *McQueen* found that the exception did not apply because "the ultimate issue in the case" was whether the plaintiff "received an appropriately individualized IEP and whether he was denied a FAPE." *Id.* at 876. The *McQueen* court further noted "that we have never excused a party's failure to exhaust its IDEA administrative remedies under the general-applicability exception." *Id.* at 875 n.1. The Third Circuit found this exception applicable where the factual record was fully developed, the parties agreed that the plaintiff's current educational services

were inadequate, and the school had failed (or chosen) to not grant the plaintiff the required relief. *Lester H. by Octavia P. v. Gilhool*, 916 F.2d 865, 869–70 (3d Cir. 1990).

The third and last exception to the exhaustion requirement is when the plaintiff alleges there are systemic violations of the IDEA. The Ninth Circuit defines the exception as follows:

> [A] claim is "systemic" if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act; but that it is not "systemic" if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem.

*Doe v. Ariz. Dept. of Educ.*, 111 F.3d 678, 681 (9th Cir. 1997). For the Second Circuit, the common element in four prior cases where exhaustion was excused because the allegations concerned systemic violations was

> the plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process. If each plaintiff had been forced to take his or her claim before a hearing officer and appeal to another local or state official, there would have been a high probability of inconsistent results. Moreover, the plaintiffs' claims were such that an administrative record would not have been of substantial benefit to the district court.

*J.S. ex rel. N.S. v. Attica Central Schs.*, 386 F.3d 107, 114 (2d Cir. 2004).

## C.    Claims Against the BSEA for Improper Result and Procedures

The Plaintiffs allege that the BSEA reached the wrong result and went about reaching that decision incorrectly. (Am. Compl. ¶¶ 47, 49–52.) The claims are that the BSEA: did not apply the required legal standards for reversing an IHO and improperly reversed IHO factual determinations (¶ 47); erred in presuming that the School Defendants' due process rights "may override" the student's due process rights (¶ 49); and erred by not addressing the failure of the

alternative school to have a special education teacher (¶ 50). The Plaintiffs also make the general allegation that the BSEA "made certain specific factual errors or deliberation misconstructions of the evidence." (*Id.* ¶ 37.)

These claims about the results of the BSEA decisions and how it reached that decision do not state a claim upon which relief may be granted because the BSEA and other State Defendants, insofar as they are implicated, are not proper parties for such claims in this suit. The claims may be considered as part of the argument for why the Court should reverse the BSEA, but they do not give rise to liability on the part of the BSEA.

In general, when parents bring an action on behalf of their child, challenging the provision of a free and appropriate education as required under the IDEA, the independent school district within which the child's school is located is considered a real party in interest to the action. *See Doe v. Eagle-Union Cmty Sch. Corp.*, 101 F. Supp. 2d 707, 717 (S.D. Ind. 2000), *vacated on the merits as moot*, 2 F. App'x 567 (7th Cir. 2001); *Moubry v. Kreb*, 58 F. Supp. 2d 1041, 1051 (D. Minn. 1999) (dismissing state educational commissioner as nominal party in student's IDEA suit challenging appropriateness of his IEP); *see also Guthrie v. Circle of Life*, 176 F. Supp. 2d 919, 922 (D. Minn. 2001) (holding that Bureau of Indian Affairs, which played a role similar to that played by a state in the provision and enforcement of the IDEA, was not a necessary party to parent's action to recover attorney's fees and costs expended in an administrative action on behalf of student). Under the IDEA, an independent school district qualifies as an LEA, and it is the LEA, given its administrative and financial control over the individual school, that may be held legally accountable under the Act for the provision of the child's education. *See* 20 U.S.C. § 1401(15)(A) (defining LEA). This concept was reiterated by a

district court in the Southern District of Indiana, where the court granted summary judgment for the state defendants[1] and concluded that the plaintiffs' remedy for an erroneous decision was an IDEA action against the local school district under 20 U.S.C. § 1415(i)(2). *Weyrick v. New Albany-Floyd County Consol. Sch. Corp.*, 2004 WL 3059793, at *22 (S.D. Ind. Dec. 23, 2004) (reasoning that "[s]uing the BSEA for deciding a case incorrectly is no more appropriate than adding the trial judge as a party-defendant to an appeal of an adverse decision").

Here, the Plaintiffs have sued the LEA along with the State Defendants under 20 U.S.C. § 1415(i)(2)(A), which provides for the cause of action. Accordingly, the Court shall receive the records of the administrative proceedings, hear additional evidence, if requested, and grant the relief it determines to be appropriate based on the preponderance of the evidence. 20 U.S.C. § 1415(i)(2)(B) (setting standard for judicial review); *see* also 511 Ind. Admin. Code § 7-30-4(n)(3) (providing that a party disagreeing with the decision of the BSEA may appeal to a civil court which shall "grant the relief it determines to be appropriate, basing its decision on a preponderance of the evidence"). For example, the Court will review the administrative record and decide whether the Plaintiffs, the IHO, or the State of Indiana are correct, and in what respects. The Court will grant the appropriate relief, which will affect the Plaintiffs and the School Defendants as the LEA, not the State Defendants. When a party challenges the correctness of the BSEA's decision, the State Defendants are not a part of the anticipated resolution.

That is not to say that state educational agencies can never be sued under the IDEA. In

---

[1] The state defendants were the Indiana Department of Education and several of its agencies and employees.

certain circumstances, it is appropriate to extend an IDEA lawsuits beyond the LEA to state educational agencies as discussed in Part C.1., *supra*. For example, a state educational agency is a proper party to actions involving claims of systemic violations of the IDEA. *See, e.g., Yamen v. Bd. of Educ. of the Arlington Central Sch. Dist.,* 909 F. Supp. 207, 210 (S.D.N.Y. 1996). A systemic claim is one which "implicates the integrity of the IDEA's dispute resolution procedures themselves, or requires restructuring of the education system itself in order to comply with the dictates of the [IDEA]." *Fetto v. Sergi*, 181 F. Supp. 2d 53, 72 (D. Conn. 2001) (alteration in original) (quoting *Mrs. M. v. Bridgeport Bd. of Educ.,* 96 F. Supp. 2d 124, 133 n. 12 (D. Conn. 2000)). But the claims in the enumerated paragraphs addressed in this section are not systemic claims. *See* Part D., *infra*, for analysis of the Plaintiffs' systemic claims.

This category of the Plaintiffs' claims concerns only the results of the BSEA's specific decision for Plaintiff M.O.'s case and does not include allegations that any practice or policy of the State Defendants leads to procedural deficiencies in the BSEA hearings in general. The Plaintiffs, in this category of claims at least, are not challenging a systematic practice affecting all parties who appeal to the BSEA. These claims, at their heart, are related to the development and implementation of an IEP for one particular child, M.O., not to any statewide concerns.[2] As such, the Plaintiffs claims in paragraphs 37, 47, and 49–52 do not state a claim against the BSEA upon which relief may be granted, so they must be dismissed.


**D.      Plaintiffs' Allegations of Systemic Violations of the IDEA**

---

[2] The Court notes that this category of claims is similar to the Plaintiffs' claims in *J.K. v. Metropolitan School District Southwest Allen County*, No. 1:04-CV-293, 2005 Lexis 42438 (May 24, 2007 N.D. Ind.). *See* Compl., 1:04-CV-293, DE 1 (Aug. 5, 2004). Accordingly, the Court's analysis here is similar to its analysis in that case, *see* 2005 Lexis 42438, at *12–18.

The Plaintiffs also make several claims that are allegations of systemic violations of the IDEA. They state that the BSEA: "routinely reverses hearing officer decisions that are favorable to parents, and finds in favor of school corporations," (Am. Compl. ¶¶ 10, 11) and, as a part of this, overrules IHO credibility determinations and IHO decisions that are supported by substantial evidence in the record. (*Id.*) The Plaintiffs also allege that "State Defendants have failed to ensure an administrative hearing system that comports with the IDEA's requirements" in light of the errors that the BSEA attributed to the IHO. (*Id.* ¶ 48.)

1.  *Are These Claims Truly Allegations of Systemic Violations?*

Allegations of systemic violations can be excused from administrative exhaustion. *E.g.*, *McQueen v. Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868 874–75 (10th Cir. 2007). The Seventh Circuit has not addressed allegations of systemic violations in a reported IDEA case.[3] The Ninth Circuit defines the systemic exception as follows:

> [A] claim is "systemic" if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act; but that it is not "systemic" if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem.

*Doe v. Ariz. Dept of Ed.*, 111 F.3d 678, 681 (9th Cir. 1997). For the Second Circuit, the common element in four prior cases where exhaustion was excused as being futile because the plaintiffs alleged systemic violations of the IDEA was

> the plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were

---

[3] However, the Seventh Circuit did address the issue in *Waters v. South Bend Community School Corp.*, 191 F.3d 457, 1999 WL 528173 (7th Cir. 1999) (table decision).

incapable of correction by the administrative hearing process. If each plaintiff had been forced to take his or her claim before a hearing officer and appeal to another local or state official, there would have been a high probability of inconsistent results. Moreover, the plaintiffs' claims were such that an administrative record would not have been of substantial benefit to the district court.

*J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 114 (2d Cir. 2004). Applying that standard, the Second Circuit ruled that the complaint challenged "the School District's total failure to prepare and implement Individualized Education Programs," and contained other allegations of systemic problems. *Id.* at 115. As a result, the plaintiffs did not have to administratively exhaust those claims. *Id.*

Another example of claims alleging a systemic violation occurred in *Heldman ex re. T.H. v. Sobol*, 962 F.2d 148 (2d Cir.1992).

Resort to the New York state administrative process in this case would be futile. Heldman claims that the NYSED regulation specifying the hearing officer selection procedure violates the mandate of IDEA. Because the regulation implements a New York statute, neither the Commissioner nor the assigned hearing officer has the authority to alter the procedure; therefore, it would be an exercise in futility to require Heldman to exhaust the state administrative remedies. To require a systemic challenge, such as Heldman's, to pursue administrative remedies would not further the purposes of IDEA and would only serve to insulate the state procedures from review—an outcome that would undermine the system Congress selected for the protection of the rights of children with disabilities.

*Id.* at 159 (citation and footnote omitted).

However, plaintiffs cannot simply assert that their allegations are systemic in order to survive the exhaustion requirement, and courts have not excused claims that are merely couched as allegations of systemic violations. *See, e.g.*, *McQueen*, 488 F.3d at 874–75; *Ellenberg v. New Mexico Military Inst.*, 478 F.3d 1262, 1277–78 (10th Cir. 2007); *Waters v. South Bend Cmty. Sch. Corp.*, 191 F.3d 457, 1999 WL 528173 (7th Cir. 1999); *Doe v. Ariz. Dept of Ed.*, 111 F.3d at 681–84; *Romer*, 992 F.2d at 1044; *Hoeft*, 967 F2d 1298, 1304–10 (9th Cir. 1992). "[W]hat

constitutes a systemic failure is not so easily defined." *Doe*, 111 F.3d at 681.

In *Hoeft*, the plaintiffs challenged "the criteria Tucson Unified uses to determine eligibility for extended year services, the type and amount of extended year programming provided to eligible students, and Tucson Unified's failure to comply with the IDEA's notification requirements." 967 F.2d at 1302. The court said these allegations "do not rise to a truly systemic level in the sense that the IDEA's basic goals are threatened on a system-wide basis." *Id.* at 1305. It added that the plaintiffs' claims "do not rise to systemic proportions. Moreover, the equitable relief they seek is not structural in nature, but rather targets predominantly substantive aspects of a single component of Tucson Unified's special education program." *Id.* at 1309.

The court in that case also noted that

> [s]tructuring a complaint as a challenge to policies, rather than as a challenge to an individualized education program formulated pursuant to these policies, however, does not suffice to establish entitlement to a waiver of the IDEA's exhaustion requirement. Plaintiffs must demonstrate in addition that the underlying purposes of exhaustion would not be furthered by enforcing the requirement.

*Id.* at 1304. Those underlying purposes of exhaustion include: "the notion that agencies not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer," *id.* at 1303 (internal quotations omitted) and "the traditionally strong state and local interest in education," *id.* Also,

> [e]xhaustion of the administrative process allows for the exercise of discretion and educational expertise by state and local agencies, affords full exploration of technical educational issues, furthers development of a complete factual record, and promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children.

*Id.*

In *Romer*, the plaintiffs claimed "that [the Colorado Department of Education] has denied them appropriately individualized IEPs because its policies arbitrarily predetermine the duration of [extended school day] and [extended school year] services and use a single criterion to determine eligibility for ESY services." 992 F.2d at 1043. The court ruled that the "violations alleged and relief requested . . . do not target structural or due process concerns, but rather the effect of a single component of CDE's educational program on individual children's IEPs." *Id.* at 1044.

The Seventh Circuit's decision in *Waters* also is instructive even if it is not binding precedent. The plaintiff in that case claimed "the school system's systemic failure to identify students with learning disabilities is not capable of being addressed by the IDEA administrative process." *Waters*, 191 F.3d 457, 1999 WL 528173, at *4. But the relief sought by the plaintiff precluded his claim from being excused from the administrative exhaustion requirement.

> Even if we assume that Mr. Waters is claiming that the underlying causes of his failure to receive a sufficient education involve the systemic failure to identify disabled students, the remedy he seeks is an individual remedy to make himself whole. He does not seek relief that requires restructuring, by judicial order, of the mechanism that the state has in place to meet the needs of students with special educational problems. Nor does he allege that he effectively has been deprived of an administrative forum. The individual-specific relief that he ultimately seeks may be granted through the administrative process.

*Id.* (citation omitted).

This case is a close call. Even though the claims mentioning systemic problems are tied to (conceptually and even grammatically) the individual claim concerning Plaintiff M.O., they are claims of systemic violations nonetheless. Alleging that the BSEA essentially favors school districts and disfavors students and their parents regardless of the merits of each case is a (perceived) "structural concern," *Romer*, 992 F.2d at 1044, about the implementation of the

18

IDEA for all students, not just Plaintiff M.O., not just those suffering from oppositional defiant disorder like Plaintiff M.O., and not just those students who were not timely evaluated. The same goes for alleging that hearing officers are not competent to hear cases. If those allegations are true, then "the IDEA's basic goals are threatened on a system-wide basis," *Hoeft*, 967 F.2d at 1305, because no student will get a fair hearing (on the presumption that fairness requires competence). Also, the relief sought supports a finding that these claims truly concern systemic issues. The Plaintiffs ask the Court to "[e]njoin the State Defendants from utilizing the current administrative hearing system, and precluding the use in the future of any local hearing officers that the BSEA has determined do not follow requisite procedures." (Am. Compl. 16.) Unlike in *Hoeft*, this "equitable relief they seek is . . . structural in nature," *Hoeft*, 967 F.2d at 1309, and it "requires restructuring by judicial order," *Waters*, 191 F.3d 457, 1999 WL 528173, *4.

Accordingly, these claims are considered systemic violations of the IDEA and they are excused from the administrative process. Therefore, they cannot be dismissed at this time.

**2.      *Is the BSEA Entitled to Quasi-Judicial Immunity on the Claims of Systemic Violations?***

Because these claims of systemic violations of the IDEA against the BSEA are excused from administrative exhaustion, the Court must consider an alternative defense argued by the BSEA: quasi-judicial immunity, which is absolute immunity. The State Defendants argue that the BSEA is entitled to quasi-judicial immunity under *Butz v. Economou*, 438 U.S. 478, 514 (1978) (federal administrative law judges performing adjudicatory functions are entitled to absolute immunity from damages liability for their judicial acts).

The Seventh Circuit uses a "functional approach" to determine if an official should

receive quasi-judicial immunity. *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004). "[W]e rely not upon that official's position in government, but on an examination of the nature of the functions he was performing in the case." *Mother Goose Nursery Schs., Inc. v. Sendak*, 770 F.2d 668, 671 (7th Cir. 1985). That entails consideration of three factors: "the historical or commonlaw basis for the immunity in question," *id.*; "whether the functions which the official performs subject him to the same obvious risks of entanglement in vexatious litigation as is characteristic of the judicial process," *id.*, which includes "the possibility that losers will bring suit against the decision-makers in an effort to relitigate the underlying conflict and charg[e] the participants in the first with unconstitutional animus," *id.*; and "whether the official is subject to checks upon abuses of authority, such as the correction of error on appeal" *id.* (internal quotations omitted). Also, the Supreme Court stated that the following factors are "characteristic of the judicial process" and are to be considered in determining the applicability of quasi-judicial absolute immunity:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985).

The Supreme Court has stated that it "[has] been quite sparing in [its] recognition of absolute immunity, and ha[s] refused to extend it any further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 487 (1991). "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." *Id.* at 486.

The Seventh circuit has extended quasi-judicial immunity to: a mayor for his actions in suspending a liquor license, closing a bar, and imposing a fine all in accordance with local law because those were judicial functions, *Killinger v. Johnson*, 389 F.3d 765 (7th Cir. 2004); members of Illinois State board of elections, *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 522 (7th Cir. 2001); an administrative hearing officer in Chicago's Bureau of Parking, *Coghlan v. Chapman*, 962 F.2d 10, at *3 (7th Cir. 1992) (table decision); the Indiana Attorney General for his review of contracts between the State and a company, *Mother Goose Nursery Schs., Inc.*, 770 F.2d at 671; Illinois Racing Board members, stewards, and counsel "when they participated in the proceedings wherein [plaintiff's] [horse racing] license was suspended and his license application was denied," *Scott v. Schmidt*, 773 F.2d 160, 163–65 & n.4 (7th Cir. 1985)[4]; the Illinois Prisoner Review Board, *Trotter v. Klincar*, 748 F.2d 1177, 1182 (7th Cir. 1984); a local liquor control commissioner, *Reed v. Village of Shorewood*, 704 F.2d 943 (7th Cir. 1983), members of Illinois state parole boards, *United States ex rel. Powell v. Irving*, 684 F.2d 494 (7th Cir. 1982); and Indiana's partition commissioners, who have functions in relation to partition sales of real estate analogous to those of Illinois local liquor control commissioners in relation to liquor licenses, *Ashbrook v. Hoffman*, 617 F.2d 474, 476–77 (7th Cir. 1980).

The State Defendants devote about a page and a half of their Memorandum to this argument, (Defs. Mem. in Supp. of Mot. to Dismiss 3–5), and they do not compare the functions of the BSEA to the factors mentioned in *Mother Goose* and *Cleavinger*. Instead they made a general citation to the state adminstrative code, "*See generally* 511 IAC 7-30-4 (i-m.)," (Defs.

---

[4] This particular ruling may be of some limited value. Because the plaintiff did not "challenge the general applicability of quasi-judicial immunity to Racing Board members and counsel," *Scott*, 773 F.3d at 164 n.4, the Seventh Circuit did "not decide this issue" and it noted "that there are colorable arguments on both sides of the issue." *Id.*

Mem. in Supp. of Mot. to Dismiss 4.) The State Defendants then use a passage from *Weyrick v. New Albany-Floyd County Consol. School Corporation*, 2004 WL 3059793, at *21 (S.D Ind. 2004) almost word for word. The State Defendants support for quasi-judicial immunity then, is *Weyrick*, which found that "the BSEA members here fall safely within the scope of functional duties that the Seventh Circuit has found to invoke quasi-judicial immunity," 2004 WL 3059793, at *21, and another Southern District of Indiana case cited by *Weyrick*: *Doe v. Eagle-Union Comty. Sch. Corp.*, 101 F. Supp. 2d 707, 716 (S.D. Ind. 2000) ("The defendant members of the BSEA are entitled to absolute immunity for their actions in reviewing the findings and conclusions of the IHO."). Those cases are distinguishable from this one in that (1) they were decided at the summary judgment stage, so the courts had the benefit of a more factually developed evidentiary record, whereas this motion to dismiss is analyzed only on the basis of the pleadings; and (2) quasi-judicial immunity was invoked by and granted to individual members of the BSEA, whereas here the BSEA as an entity is a named defendant but its individual members are not defendants. Because those cases are distinguishable and are not binding precedent, granting quasi-judicial immunity based on their authority is not justified.

Also, because the State Defendants did not provide a detailed comparison between the various functions of the BSEA and the factors from *Butz* and *Cleavinger* (as mentioned in *Mother Goose*), they have not met "the burden of showing that such immunity is justified for the function[s] in question." *Burns*, 500 U.S. at 486. Courts are to be "quite sparing," *id.* at 487, in granting such immunity, so at the present stage of this case with the current record the Court cannot do so.

As a result, the claims of systemic violations of the IDEA against the BSEA, as set forth

in paragraphs 10, 11, and 48 are not dismissed.

**E.    Allegations that State Defendants Failed to Ensure School Defendants Complied with the IDEA**

The Plaintiffs allege that the State Defendants failed to ensure that the School Defendants complied with certain aspects of the IDEA, and that this failure in and of itself is a violation of the IDEA. The areas of failure, according to the Plaintiffs, are the "child find" requirements, that is, the obligation to conduct evaluations of children that will identify whether they are eligible for IDEA services, and if so, what kind. (Am. Compl. ¶¶ 7, 45, 46.) This resulted in Plaintiff M.O. going without needed services until his sophomore year (Pls. Resp. to Defs. Mot. to Dismiss 14, DE 26) and until after he was disciplined for fighting with another student at school (Am. Compl. ¶ 7). These complaints are specific to Plaintiff M.O. and are not allegations of systemic violations of the IDEA. (*See* Am. Compl. ¶¶ 7, 45, 46.) The Plaintiffs' Response to the Defendants' Motion to Dismiss also makes clear that these allegations are rooted in the specifics of Plaintiff M.O.'s treatment and are not general allegations of systemic violations.

> Clearly, the State Defendants have a duty to M.O. to ensure his timely identification as a student with disabilities. M.O. was not identified as disabled until he was a sophomore. His parents allege he was still not fully identified even then. Clearly this is a claim of Child Find, and to the extent the State of Indiana's Child Find system is responsible, the State of Indiana can and must be held accountable in this lawsuit.

(Pls. Resp. to Defs. Mot. to Dismiss 14, DE 26.)

The Defendants have two arguments for why these claims should be dismissed. First, they argue that the Plaintiffs did not exhaust these claims in the administrative process. Second, they argue that they only have general supervision duties and that they fulfilled these duties.

Another claim against the State Defendants is the allegation that they have failed to force

the Local Defendants to obey the final BSEA order as it pertains to the services owed to Plaintiff M.O. (Am Compl. ¶ 42.) Specifically, the Local Defendants have not convened a case conference committee to devise an IEP for Plaintiff M.O.'s placement in a school. (*Id.*)

1.    ***Can State Educational Agencies be Held Liable for Failing to Ensure Local Schools Comply with the IDEA?***

The Court must first address whether State Defendants may be held liable for failing to ensure that local schools comply with the IDEA. The Supreme Court has not decided the direct issue but has indicated the answer is affirmative. "State education agencies . . . must ensure that local schools and teachers are meeting the State's educational standards." *Schaffer v. Weast*, 546 U.S. 49, 52 (2005). "State educational authorities must identify and evaluate disabled children." *Id.* The Seventh Circuit has not decided this issue, but it appears that all the circuits that have considered the issue have decided the answer is "Yes," and the reasoning in those cases is persuasive. *See Pachl v. Seagren*, 453 F.3d 1064, 1070 (8th Cir. 2006); *M.A. ex rel. E.S. v. State-Operated Sch. Dist. of City of Newark*, 344 F.3d 335, 340 (3d Cir. 2003); *St. Tammany Parish Sch. Bd v. State of Louisiana*, 142 F.3d 776, 783–85 (5th Cir. 1998); *Gadsby v. Grasmick*, 109 F.3d 940, 952 (4th Cir. 1997); *Todd D. by Robert D. v. Andrews*, 933 F.2d 1576, 1583 (11th Cir. 1991); *Jose P. v Ambach*, 669 F.2d 865, 870–71 (2d Cir. 1982); *Kruelle v. New Castle County Sch. Dist.*, 642 F.2d 687, 696–98 (3d Cir. 1981).

Also, the statute itself indicates that states may be held liable:

> The state educational agency shall be responsible for assuring that the requirements of this subchapter are carried out and that all educational programs for handicapped children within the State, including all such programs administered by any other State or local agency, will be under the general supervision of the persons responsible for educational programs for handicapped children in the State educational agency and shall meet education standards of the State educational agency.

24

20 U.S.C. § 1412(6). The State education agency also performs a backstop role. If it "determines that the local education agency . . . is unable or unwilling to be consolidated with 1 or more local education agencies in order to establish and maintain" "special education and related services directly to children with disabilities residing in the area served by that local educational agency," then the "State education agency shall use the payments that would otherwise have been available to a local education agency . . . to provide special education and related services directly to children with disabilities." 20 U.S.C. § 1413(g)(1)(C). Last, the State Defendants do not argue that they cannot be held liable, as a matter of law, for failing to ensure that school defendants comply with the IDEA. In fact, they concede that the Plaintiffs could have named them as parties in the due process hearing pursuant to 511 Ind. Admin. Code § 7-30-3(b) or the Plaintiffs could have filed a complaint with the Defendant DOE complaining of the State Defendants pursuant to 511 Ind. Admin. Code § 7-30-2 and 34 C.F.R §§ 300.151.–.153 (2006). (*See* Def. Mem. in Supp. of Mot. to Dismiss 9, 11.)

As a general matter, state education agencies may be held liable for failing to ensure local school entities comply with the IDEA. The Plaintiffs allege this is the case here, but they did not pursue such claims against the State Defendants in the administrative proceedings. The remaining question is whether this failure to exhaust administrative remedies is excused. If not, then these claims must be dismissed.

**2.**   *Is the Plaintiffs' Failure to Exhaust These Claims Administratively Excused?*

The Plaintiffs do not argue that they exhausted these claims; rather, they claim that they did not have to. (Pls. Resp. to Defs. Mot. to Dismiss 14.) Based on the Plaintiffs' allegations and

the relief they seek, the first exception, where a plaintiff has alleged injuries that cannot be addressed by the IDEA's procedures and remedies (such as a physical injury where monetary damages are sought), is not applicable. Also, the second exception, where a policy of general applicability is challenged and no factual investigation is needed, also does not apply. That leaves the third exception pertaining not allegations of systemic violations, or something else that would show it would have been futile to pursue administrative review of the issues.

The exact contours of the Plaintiffs' argument for why exhaustion is excused are not clear.

> The State Defendants also argue that because M.O. did not file a complaint about "Child Find," with the State Defendants, they have not exhausted. Motion to Dismiss, at 19. This is incorrect. The State Defendants are responsible to [sic] ensure a hearing system that provides hearing officers who have the "knowledge and ability" they need to act as hearing officers. IHO McKinney either did or didn't have the ability to recognize a clear "Child Find" case when he found one. The State Defendants have a direct, statutory duty to ensure "Child Find." Plaintiffs need not further exhaust.

(Pl. Resp. to Defs. Mot. to Dismiss 14, DE 26.) The Plaintiffs elaborated on this argument earlier in their Response. (*See id.* at 5–10.) The argument seems to be that the IHO should have recognized during the Plaintiffs' case that the state lacked a proper "child find" system, and because the IHO failed to do so, that means he is not competent. Furthermore, the argument goes, because the State Defendants are responsible for establishing a system with competent hearing officers, then the State Defendants failed in their responsibility.

The Plaintiffs' approach fails on a number of levels. First, it is not the case that the IHO should have recognized that the State of Indiana lacked a proper "child find" system based on the findings that Plaintiff M.O. was not evaluated in a timely way. Taking at face value the IHO's findings and conclusions (that is, before they were reversed or vacated by Defendant BSEA on

appeal) that the Local Defendants (the schools) failed to evaluate Plaintiff M.O. in a timely way, does not mean that the IHO should have extrapolated from this individual finding and reached the conclusion that the entire educational system of Indiana lacks a child find system that timely evaluations children with disabilities. There is nothing in the record, such as a mention of other IHO findings and conclusions or court cases, to suggest that information about the state-wide compliance with child find requirements was even presented to the IHO, let alone that such a leap would be warranted. And the Plaintiffs in their amended complaint have failed to allege or make reference to other students who have suffered the same violation of the IDEA—not being timely identified because of a failure of the child find system—as Plaintiff M.O. claims he has suffered.

Second, even assuming that there are state-wide "child find" problems and that the IHO should have discovered those state-wide problems during the hearing on Plaintiff M.O.'s complaint, it does not follow that the State Defendants failed to have an administrative system in place where hearing officers would have the knowledge and ability to detect such problems. IHO McKinney's (assumed, for the moment) failure to detect state-wide "child find" problems could merely be an exception to Indiana's well-functioning administrative system of due process hearing officers. There is nothing in the record to suggest that other IHOs have similar (assumed) problems.

A third problem is that the Plaintiffs' proposed exception to the exhaustion requirement, allegations of systemic violations, does not hold up for the claims that the State Defendant failed to ensure the Local Defendants complied with child find requirements. These claims cannot be separated from the core claim that the Local Defendants failed to timely evaluate Plaintiff M.O.,

thus violating the child find requirements. They are not true systemic allegations; they are really an outgrowth of the claims about Plaintiff M.O. and the School Defendants.

The child find requirements are one aspect of the IDEA program in Indiana, so the claims about child find requirements really just concern "limited components of a program," *Doe v. Ariz. Dept. of Educ.*, 111 F.3d at 681, and they do not "implicate[] the integrity or reliability of the IDEA dispute resolution procedures." *Id.* at 682 (holding that the challenge to a school district's system for determining students' eligibility for special services was not an allegation of systemic violations so it was not excused from administrative exhaustion requirements). There is no allegation that the State Defendants' alleged failure to ensure that the Local Defendants complied with child find requirements is so widespread that "the nature and volume of complaints were incapable of correction by the administrative hearing process," *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d at 114; in fact, there is no mention or assertion of failing to meet child find requirements for other students at all.

Also, the relief sought here, like in *Waters* (where the plaintiff's claim about the failure to identify students with disabilities was similar to the one made in this section), precludes the Court from excusing administrative exhaustion. The only relief concerning child find requirements is a request to "[r]equire the State Defendants to conduct a special monitoring of Duneland and Porter County as to 'child find' requirements, especially of children who may be suspected of having an Other Health Impairment or Emotional Disorder[,] and to ensure that both entities are fully compliant with the IDEA in that regard." (Am. Compl. 16.) This relief, while not as "individual-specific" as the relief in *Waters*, 191 F.3d 457, 1999 WL 528174, at *4, still only concerns the Local Defendants (who are not the subject of this motion) and not the

State Defendants, and it would not necessarily "require[] restructuring the education system itself." *Doe v. Ariz. Dept. of Educ.*, 111 F.3d at 681.

Additionally, allowing the Plaintiffs to avoid administrative exhaustion on these claims would undermine one of the purposes behind that exhaustion requirement, which is fatal for the Plaintiffs. *Hoeft*, 967 F.2d at 1304 ("Plaintiffs *must demonstrate in addition* that the underlying purposes of exhaustion would not be furthered by enforcing the [administrative exhaustion] requirement." (emphasis added)). The purpose of the exhaustion requirement that would be undermined here is to identify all relevant issues at an early stage so that the appropriate agency has a chance to remedy the problem before it becomes a litigation issue in the courts. *Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245–46 (2d Cir. 2008) ("The purpose of the exhaustion rule is to channel disputes related to the education of disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances.") (internal quotations omitted); *Hoeft*, 967 F.2d at 1303 ("[e]xhaustion of the administrative process . . . promotes judicial efficiency by giving these agencies the first opportunity to correct shortcomings in their educational programs for disabled children").

When the Plaintiffs first accused the Local Defendants of failing to meet the child find requirements by failing to timely identify Plaintiff M.O., the Plaintiffs could have also made those allegations against the State Defendants. This would have afforded the State Defendants "the opportunity to correct shortcomings in their educational programs," *Hoeft*, 967 F.2d at 1303, and to apply their "expertise in the area and promptly resolve grievances." *Cave*, 514 F.3d at 245–46. The Plaintiffs cannot claim that they only realized there was a state-wide child find problem after the BSEA reversed the IHO's decision. The State Defendant's supervision of the

child find system was what it was before and after the BSEA decision; that decision did not change it or reveal some breakdown such that the Plaintiffs can avoid administrative exhaustion. By waiting to raise this claim until they had filed a case in federal court, the Plaintiffs deprived the State Defendants of the opportunity to address these issues at the administrative level, where they might have been readily resolved.

The Plaintiffs cite and rely on *Heldman ex rel. T.H. v Sobol*, 962 F.2d 148 (2d Cir. 1992), an IDEA case where the court ruled that the student's father did not have to exhaust administrative remedies. One crucial difference is that the father's federal lawsuit challenging how hearing officers are selected and alleging they have conflicts of interest was filed separately from the administrative case involving his son's education. *Id.* at 152–53. Also, the father in that case was challenging a regulation governing selection of hearing officers, *id.* at 159, while in this case the Plaintiffs are trying to turn one adversarial decision into a referendum on Indiana's state-wide compliance with "child find" requirements. In *Heldman*, the initial challenge was a general, systemic challenge. Here, for these claims at least, the initial challenge was a specific challenge, but the Plaintiffs halfway through are trying to turn them into a general, systemic challenge as a result of the State Defendants' unfavorable administrative decisions. *Heldman* does not support that tack.

The Plaintiffs also rely on *Jamie S. v. Milwaukee Public Schools*, 519 F. Supp. 2d 870 (E.D. Wis. 2007), because that court held the state education agency responsible for the local schools' failure to comply with child find requirements. *Id.* at 900–03. However, that decision took place after a class certification and a two-phase trial where the presentation of evidence included 48 witnesses, including expert witnesses, and 257 stipulated facts. *Id.* at 872. That

makes it too distinguishable to be of much use, and the case is not binding precedent in any event.

These claims, in paragraphs 7, 45, and 46 of the amended complaint, were not exhausted. The allegations in this section pertain and are tied to Plaintiff M.O. As such, they are specific allegations involving the failure to timely identify M.O.'s problems, and they cannot be couched as allegations of systemic violations so as to excuse the failure to exhaust these claims administratively.[5] Accordingly, they must be dismissed.

As to the allegations that the State Defendants have failed to enforce the BSEA decision, the Plaintiffs do not show why this claim should not be administratively exhausted, which it was not. The Plaintiffs could have sought another due process hearing to force the Local Defendants to obey the order, or to force the State Defendants to require the Local Defendants to obey the order. Also, the Plaintiffs could have filed another complaint, pursuant to 511 Ind. Admin. Code § 7-30-2. The complaint could have named as respondents both the Local Defendants, for failing to obey the BSEA order, and the State Defendants, for failing to make the Local Defendants carry out the BSEA order. There may be reasons why the Local Defendants have not complied with the BSEA order (if, in fact, they have not), and the administrative process provides a more efficient route for those issues to be addressed before the matter moves to litigation in federal court. Last, the administrative code states that "the student shall remain in the student's current educational placement during a due process hearing, administrative appeal, or judicial proceeding, unless the parties agree otherwise." 511 Ind. Admin. Code § 7-30-3(j). Because this

___

[5] Because the Court makes this finding, it need not consider the Defendants' other argument that they are "only responsible for the "'general supervision' of local education agencies" and that they have "fully complied with this 'general supervision' requirement." (Defs. Memo. in Supp. of Mot. to Dismiss 16, DE 16.)

matter is currently in a "judicial proceeding" before this Court, the fact that the student's status

and placement remains unchanged is not a claim upon which relief can be granted. Accordingly,

this claim (Am. Compl. ¶ 42) also must be dismissed.

**F.      Miscellaneous Claims**

The Plaintiffs also make several miscellaneous claims in paragraphs 9, 12, 29–33, 35, and

53–54. First, they claim that the general counsel for the Indiana Department of Education

exceeded his authority, presumably by sending or distributing the BSEA decision (*see* Am.

Compl. ¶¶ 35, 53, DE 10; Am Compl. Ex. A at 1, DE 10-2.) Second, they claim that the "BSEA

decision lacks sufficient indices that each of the panel members of the BSEA fully examined the

entire hearing record as required by the IDEA." (Am. Compl. ¶ 54.) Third, they claim that the

BSEA exceeded its authority by granting more time for the Local Defendants to appeal the IHO

ruling. (*Id.* ¶¶ 29–33, 52.) Fourth, they claim that the BSEA is unable or unwilling to judge the

credibility of witnesses who have testified at the initial due process hearing. (*Id.* ¶ 9.) Fifth and

last, the Plaintiffs claim that the BSEA does not allow itself or other State Defendants to be

named as parties in the due process hearings, making it futile to attempt to do so. (*Id.* ¶ 12.)

**1.      *Allegation that the DOE General Counsel Exceeded his Authority***

The Plaintiffs claim that the general counsel for State Defendant DOE exceeded the

authority granted to him in the administrative code, 511 Ind. Admin. Code § 7-30-4, which

provides that "[t]he general counsel for the department of education shall serve as the agent for

the board for receipt of all correspondence and the filing of documents." 511 Ind. Code § 7-30-

4(b). This is the only reference to "general counsel" in this section of the administrative code. The Plaintiffs do not provide any further explanation of what this violation could be other than a passing reference in the Response to the State Defendants' Motion to Dismiss [DE 26]. "Plaintiffs assert that [the general counsel's] 'agency role' is in excess of that intended by Indiana law, and, thus, as implemented, is contrary to the IDEA." (Pls. Resp. to State Defs. Mot. to Dismiss 12, DE 26.) However, since the general counsel is only mentioned in one other paragraph in the first amended complaint, which states that he issued the BSEA decision, (Am. Compl ¶ 36), the Plaintiffs appear to be claiming that the general counsel exceeded his authority by issuing the BSEA decision. Still, it is not clear if the Plaintiffs are challenging the Indiana administrative code on its face, or the specific actions of General Counsel Kevin C. McDowell in writing a one-page cover memorandum and issuing the BSEA decision to the parties in this case. In any event, this allegation does not state a claim upon which relief can be granted.

A similar argument was raised and dismissed by this Court under Rule 12(b)(6) in *H.H. ex rel. Hough v. Ind. Bd. of Special Educ. Appeals*, 501 F. Supp. 2d 1188, 1198 (N.D. Ind. 2007) (Springmann, J.). There, the plaintiff, represented by the same attorney that the Plaintiffs have in this case, claimed that the DOE General Counsel was assisting the BSEA in some way under the auspices of 511 Ind. Admin. Code § 7-30-4 and thus was playing a decision-making role, which is prohibited. This Court stated: "Plaintiffs cannot establish any set of facts consistent with these allegations that would support an inference that acting as the agent for receipt of documents is akin to playing a decision-making role in the review process." *Id.* In this case, if the Plaintiffs' claim here is that the administrative code implementing the IDEA is invalid on its face because it improperly involves the general counsel, a DOE employee, in the decision-making process, then

that claim is foreclosed here just as it was in *Hough*.

If the Plaintiffs' claim challenges the specific actions of General Counsel McDowell in this particular case, then there is no set of facts that would show that writing a cover memo and issuing the decision exceeds the general counsel's agency authority. To the contrary, such actions seem to be exactly what the administrative code calls when it spells out that the general counsel "shall serve as the agent for the board for receipt of all correspondence and the filing of documents" 511 Ind. Admin. Code § 7-30-4(b). Issuing documents is a corollary function to receiving correspondence and filing documents. The general counsel functioned as nothing more than a central clearinghouse here, as authorized by the administrative code.

Accordingly, this claim regarding the general counsel is dismissed.

2.      *Allegation that the BSEA Decision Lacks Sufficient Indices that Each Member of the BSEA Fully Examined the Entire Record as Required by the IDEA*

The Plaintiffs claim that the "BSEA decision lacks sufficient indices that each of the panel members of the BSEA fully examined the entire hearing record as required by the IDEA." (Am. Compl. ¶ 54.) This is based on the fact that only one member of the BSEA signed the decision, and the fact that the BSEA decision contains this statement: "The entire record from the [IHO] hearing was photocopied and provided to each member of the BSEA." (BSEA Decision 19, DE 10-2 at 21.)

It is true that the BSEA decision does not contain a statement such as: "Each of the panel members fully examined the entire hearing record." That does not mean that the BSEA did not comply with its duty to review the record, or that the BSEA decision does not so indicate.

The relevant part of the administrative code provides: "The board, in conducting an

impartial review, shall review the entire record of the due process hearing to ensure the procedures of the hearing were consistent with the requirements of section 3 of this rule. The board may decide the matter with or without oral argument." 511 Ind. Admin. Code. § 7-30-4(j). The code also provides:

> (k) If the board decides to hear oral argument, the parties shall be notified of the decision in advance of the scheduled proceeding. The oral argument shall be held at a time and place reasonably convenient to all parties in the proceeding.
> (l) When the board permits oral argument, each party has the right to be represented by counsel or other individuals with knowledge and training with respect to special education or the problems of children with disabilities. Each party has the opportunity for argument and rebuttal. The board may ask questions of any person present to clarify the record. The board may, at its discretion, exercise the same powers as an independent hearing officer under section 3 of this rule. When the board receives evidence or testimony, the parties shall have the same rights as under section 3(l) of this rule.
> (m) The board, upon completion of its impartial review, shall prepare an independent written decision that:
> > (1) contains findings of fact, conclusions of law, and, if necessary, orders; and
> > (2) includes a notice of the following:
> > (A) The right to seek judicial review

*Id.* § 7-30-4(k)–(m).

The BSEA decision clearly indicates that the Board complied with all these requirements. The BSEA heard oral argument as requested by the Plaintiffs. (BSEA Decision 19–20, DE 10-2 at 21–22.) "Following oral argument, the BSEA met to review the issues raised in the Petition for Review, the Response thereto, and the arguments presented with reference to the record as a whole." (*Id.* at 20, DE 10-2 at 22.) This is a sufficient indication that the BSEA as an entity and its individual members reviewed the "entire record" or "record as a whole." The fact that only the chair of the BSEA signed the decision (electronically, at that) in no way can give rise to a claim that the BSEA failed to conduct an impartial and full review as required in the administrative code. Therefore, this claim is dismissed.

**3.**     *Allegation that the BSEA Exceed its Authority by Granting the Local Defendants an Extension to File Their Petition for Review*

The Plaintiffs claim the BSEA exceeded its authority, apparently as spelled out in 511 Ind. Admin. Code § 7-30-4, by granting the Local Defendants an extension to file their petition for review after the IHO decision. (Am. Compl. ¶¶ 29–33, 52.) Specifically, the Plaintiffs claim that the School Defendants did not appeal the IHO's October 12, 2006, decision until March 1, 2007. This four-month period would make the appeal untimely, the Plaintiffs argue, but the BSEA allowed the petition and even granted an "additional" extension.

The administrative code section governing appeals provides that the petition for review to the BSEA must be "filed withing thirty (30) calendar days of the date the independent hearing officer's decision is received by the party." 511 Ind. Admin. Code § 7-30-4(d)(4). Also, "[a]ny petition for review that does not comply with the requirements of subsection (d) *may be* dismissed, in whole or in part, *at the discretion of the board*." *Id.* § 7-30-4(g) (emphasis added). "Specific extensions of time may be requested by any party to the appeal and granted by the chair of the board." *Id.* § 7-30-4(i).

The Court is satisfied that the petition for review was not untimely. The IHO issued an interim order on October 9, 2006, with a written decision following on October 12. (BSEA Decision 2, DE 10-2 at 4.) The hearing process continued with meetings, pleadings, and a hearing over several days, and the IHO issued the final written decision on February 26, 2007. The BSEA determined that the appeal time from that decision would be the normal 30 days. The BSEA noted that the interim order from October "should have been a final and appealable decisions" and not characterized as an interim decision. (*Id.* at 14, DE 10-2 at 16.) On March 28, 2007, (exactly 30 calendar days from the date of the final IHO decision), the Local Defendants

36

requested an extension to file their Petition for Review. The BSEA considered this request to be "timely," and granted the one-week extension over the objection of the Plaintiffs. (*Id.*) The Court is satisfied with the explanation of the procedural history, and it does not appear that the appeal was untimely. Therefore, the BSEA could not have exceeded its authority in granting an extension.

Even if the Local Defendants' petition for review was untimely, the BSEA was in its discretion, as spelled out in the administrative code, to allow the petition and also to grant an extension of time. Accordingly, this claim is dismissed.

**4.** ***Allegation that BSEA Members Cannot or Do Not Judge the Credibility of Witnesses who Testified at the Initial Hearing***

The Plaintiffs also seem to make a claim of a systemic violation when they allege that Indiana's administrative code implementing the IDEA and the BSEA's practice do not ensure that BSEA "panel members will be able to judge the credibility of witnesses who testify only at the local hearing level. Upon information and belief, the BSEA has never allowed testimony at the BSEA level." (Am Compl. ¶ 9.)

In the first place, the Plaintiffs have not articulated how this allegation, even if true, states a claim upon which relief can be granted. For example, the Plaintiffs did not claim that this practice violates Plaintiffs' due process rights. So even if the BSEA has never allowed testimony at the BSEA level, that does not give rise to any relief. Second, the Defendant correctly notes that the administrative code does allow a process for the BSEA to evaluate the credibility of witnesses who testified at the initial hearing. If the board elects to hear oral argument, 511 Ind. Admin. Code § 7-30-4(k), (as it did in this case), then parties can bring "individuals with

knowledge and training with respect to special education or the problems of children with disabilities." *Id.* § 7-30-4(l). The Court reads this as allowing parties to bring witnesses. "The board may ask questions of any person present to clarify the record. The board may, at its discretion, exercise the same powers as an independent hearing officer under section 3 of this rule. *When the board receives* evidence or *testimony*, the parties shall have the same rights as under section 3(l) of this rule." *Id.* § 7-30-4(l) (emphasis added). The rights spelled out in § 7-30-3(l) include the right to present evidence and the right to confront, cross-examine, and compel attendance of witnesses. *Id.* § 7-30-3(l)(1), (2). This shows that the administrative code does allow for BSEA panel members to evaluate the credibility of witnesses who have testified at the initial hearing. The allegation that the BSEA never has allowed such testimony, without more (like an explanation how that practice violates a legal right), is not a claim upon which relief may be granted. The claim is dismissed.

5.      *Allegation that the BSEA Does Not Allow Itself or the Other State Defendants to be Named as a Party in a Due Process Hearing*

The Plaintiffs claim that the BSEA does not allow itself or other State Defendants to be named as parties in the due process hearings, making it futile to attempt to do so. (Am. Compl. ¶ 12.) This argument suffers from the failure to exhaust administrative remedies. The Plaintiffs should have exhausted this administratively by attempting to name those entities as parties and then recounting how they were unable to do so. There is nothing in the relevant portions of the administrative code that indicate those entities cannot be named as parties for a due process hearing. To the contrary, as the State Defendants point out, (Def. Mem. in Supp. of Mot. to Dismiss 7), the code in § 7-30-3(b) provides that students and their guardians can name State

defendants if they are involved in the alleged violation of the student's rights. Therefore, this claim is dismissed.

## CONCLUSION

For the foregoing reasons, the State Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. All claims against the State Defendants are dismissed except for the claims of systemic violations of the IDEA against the BSEA contained in paragraphs 10, 11, and 48 of the First Amended Complaint.

So ORDERED on August 29, 2008.

    s/ Theresa L. Springmann    
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT