# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| M.O., by his parents and next friends, C.O. and L.O., | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 2:07-CV-175-TS |
| INDIANA DEPARTMENT OF EDUCATION, INDIANA BOARD OF EDUCATION, INDIANA BOARD OF SPECIAL EDUCATION APPEALS, DUNELAND SCHOOL CORPORATION, and PORTER COUNTY EDUCATION SERVICES, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION and ORDER

Before the Court are the Plaintiffs' Motion for Summary Judgment Against State Defendants [DE 46], filed on July 8, 2008, and the State Defendants' Motion for Summary Judgment [DE 53], filed on August 28, 2008.

## BACKGROUND

This is a lawsuit brought under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 *et seq.* The Plaintiffs are student M.O. and his parents. The Defendants are: Duneland School Corporation and Porter County Education Services (collectively, the School Defendants); and the Indiana Department of Education (DOE), Indiana Board of Education (BOE), and the Indiana Board of Special Education Appeals (BSEA) (collectively, the State Defendants).

The State Defendants' filed a Motion to Dismiss State Defendants [DE 15] on July 31, 2007, asking the Court to dismiss the claims in the Amended Complaint against them. The Court granted that motion, (*see* August 29, 2008, Opinion and Order, DE 54), except for claims in three

paragraphs alleging systemic violations of the statute:

> 10. Upon information and belief, the BSEA routinely reverses hearing officer decisions that are favorable to parents, and finds in favor of school corporations, including over ruling hearing officer credibility determinations.
> 11. Upon information and belief based on past practices, the BSEA routinely reverses hearing officer decisions that are favorable to parents and finds in favor of school corporations, even where hearing officers have before them, in the record, substantial evidence supporting their decision.
> 48. The State Defendants have failed to ensure an administrative hearing system that comports with the IDEA's requirements, given the BSEA's criticisms of IHO McKinney, leaving M.O. and his parents with no remedies for violations of the IDEA by the IHO McKinney. The State Defendants, not the parents, are responsible to ensure full compliance with the IDEA, including procedural requirements of hearings and hearing officers adequately trained to handle due process hearings.

(Am. Compl. 10, 11, 48.)

The case is now in the summary judgment phase.[1] The Plaintiffs and the State Defendants have filed cross motions for summary judgment, and the motions are ripe for ruling. (The Plaintiffs and the School Defendants also have filed summary judgment cross motions that are ripe for ruling. The Court will address those motions in a separate opinion and order).

## LEGAL STANDARD

In IDEA cases, summary judgment "is the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Evanston Cmty. Consol. Sch. Dist. Number 65 v. Michael M.*, 356 F.3d 798, 802 (7th Cir. 2004). "[T]he term 'summary judgment' in the context of an IDEA case has a different meaning than it has in a typical Rule 56 motion. The motions filed by each party might more accurately have been titled 'motion for judgment

---

[1] The Court issued its Opinion and Order denying in part and granting in part the State Defendants' Motion to Dismiss in the midst of the summary judgment briefing, but neither party here sought leave to amend their briefs or to file supplemental briefs in light of the Court's Opinion and Order.

under the IDEA' Labels aside, the party challenging the outcome of the administrative proceedings . . . bears the burden of proof." *Alex R., ex rel. Beth R. v. Forrestville Valley Cmty. Unit Sch. Dist. #221*, 375 F.3d 603, 611 (7th Cir. 2004). However, the summary judgment motions here address allegations of systemic violations of IDEA. They do not address only the specific educational status of Plaintiff M.O. As such, these motions are evaluated under the normal standard for cross-motions for summary judgment rather than the preponderance of the evidence standard using the administrative record.

The Federal Rules of Civil Procedure provide that motions for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A genuine issue of material fact exists when "'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *AA Sales & Assocs. v. Coni-Seal, Inc.*, 550 F.3d 605, 608–09 (7th Cir. 2000) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986)). The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Under Rule 56(e)(2), a party opposing a properly made and supported motion for summary judgment "may not rely merely on allegations or denials in its own pleading; rather its response must—by affidavits or as otherwise provided in this rule—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). The evidence the nonmovant relies on must be identified with reasonable particularity and must be "competent evidence of a type otherwise admissible at trial." *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996); *see also*

*Powers v. Dole*, 782 F.2d 689, 696 (7th Cir. 1986) (stating that when evidence is offered through exhibits on a summary judgment motion, those exhibits "must be identified by affidavit or otherwise admissible"). If appropriate, summary judgment should be entered against a party who fails to so respond. Fed. R. Civ. P. 56(e)(2); *see also Celotex*, 477 U.S. at 322 (holding that a court should enter summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

A court's role on summary judgment is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact. *Anderson,* 477 U.S. at 255; *Washington v. Haupert*, 481 F.3d 543, 550 (7th Cir. 2007); *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003). Thus, a court in ruling on a summary judgment motion construes all facts in the light most favorable to the nonmoving party and draws all reasonable inferences in that party's favor. *AA Sales & Assocs.*, 550 F.3d at 609. A material fact must be outcome determinative under the governing law. *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598–99 (7th Cir. 2000). Although a bare contention that an issue of fact exists is not sufficient to create a factual dispute, the court must construe all facts in a light most favorable to the nonmoving party as well as view all reasonable inferences in that party's favor. *See Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000)

Pursuant to local rule, the Court is to assume that the facts claimed by the moving party and supported by admissible evidence are admitted to exist without controversy, except to the extent such facts are controverted in a "Statement of Genuine Issues" filed in opposition to the

4

motion and supported by admissible evidence. N.D. Ind. L.R. 56.1(b).

When cross-motions for summary judgment are filed, courts "look to the burden of proof that each party would bear on an issue of trial; [courts] then require that party to go beyond the pleadings and affirmatively to establish a genuine issue of material fact." *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir.1997) (citing *Celotex*, 477 U.S. at 324.)

"The contention of one party that there are no issues of material fact sufficient to prevent the entry of judgment in its favor does not bar that party from asserting that there are issues of material fact sufficient to prevent the entry of judgment as a matter of law against it." *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 313 (2d Cir.1981), quoted in *Zook v. Brown*, 748 F.2d 1161, 1166 (7th Cir. 1984). "It is true that cross-motions for summary judgment do not waive the right to a trial, but this rule does not alter the respective burdens on cross-motions for summary judgment—more particularly here, the responsive burden of a plaintiff who moves for summary judgment and is confronted with a cross-motion for summary judgment. The motions are treated separately." *McKinney v. Cadleway Properties, Inc.*, 548 F.3d 496, 504 n.4 (7th Cir. 2008) (citations omitted). In other words, even if plaintiffs filed their own motion for summary judgment, that does "not relieve them of their burden as the nonmovants relative to the defendant's motion for summary judgment." *Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 603 (7th Cir. 1989). In that situation, the plaintiffs are "required to set forth specific facts showing why summary judgment on behalf of the defendants was not appropriate." *Id.*

**MATERIAL FACTS and ANALYSIS**

The State Defendants raise the defense of quasi-judicial immunity against the remaining

claims. Because this defense is common to both kinds of claims—that the BSEA routinely rules against parents and in favor of schools (Am. Compl. ¶¶ 10, 11), and that the BSEA (and other State Defendants) have failed to ensure there is a fair hearing system, in violation of IDEA's requirements, (Am. Compl. ¶ 48)—the Court will address this threshold issue first. After that, the Court will address the remaining claims and issues as necessary.

Relevant facts, which are incorporated into the analysis below as required, are construed in a light most favorable to the nonmoving party on the issues that party would have to prove at a trial.

**A.    Quasi-Judicial Immunity**

The Court briefly addressed this issue in its prior Opinion and Order, stating that the State Defendants had not provided a sufficient basis for the Court to rule that the BSEA should receive quasi-judicial immunity. The State Defendants address the issue in more detail over five pages in their Reply in Support of Motion for Summary Judgment. (*See* State Defs. Reply 15–20, DE 78.) They also briefly discuss the issue in their Memorandum in Support of Motion for Summary Judgment. (*See* State Defs. Mem. in Supp. 4–5, DE 53-2.) The Plaintiffs dispute that the BSEA is entitled to quasi-judicial immunity: "The State Defendants miss the point by arguing that the BSEA is like a trial court, and as such is entitled to quasi-judicial immunity. The BSEA is not a trial court." (Pls. Reply 3, DE 51.) The Plaintiffs further state that even if the BSEA is entitled to quasi-judicial immunity, that does not "absolve[] the State of Indiana from ensuring M.O.'s statutory right to a hearing consistent with the IDEA. That is the responsibility of the State of Indiana." (*Id.*)

Quasi-judicial immunity is absolute immunity from suit. *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 521 (7th Cir. 2001). The Seventh Circuit uses a "functional approach" to determine if an official should receive quasi-judicial immunity. *Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004). "[W]e rely not upon that official's position in government, but on an examination of the nature of the functions he was performing in the case." *Mother Goose Nursery Schs., Inc. v. Sendak*, 770 F.2d 668, 671 (7th Cir. 1985). That entails consideration of three factors: "the historical or commonlaw basis for the immunity in question," *id.*; "whether the functions which the official performs subject him to the same obvious risks of entanglement in vexatious litigation as is characteristic of the judicial process," *id.*, which includes "the possibility that losers will bring suit against the decision-makers in an effort to relitigate the underlying conflict and charg[e] the participants in the first with unconstitutional animus," *id.*; and "whether the official is subject to checks upon abuses of authority, such as the correction of error on appeal" *id.* (internal quotations omitted). Also, the Supreme Court stated that the following factors are "characteristic of the judicial process" and are to be considered in determining the applicability of quasi-judicial absolute immunity:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985).

The Supreme Court has stated that it "[has] been quite sparing in [its] recognition of absolute immunity, and ha[s] refused to extend it any further than its justification would warrant." *Burns v. Reed*, 500 U.S. 478, 487 (1991). "[T]he official seeking absolute immunity

7

bears the burden of showing that such immunity is justified for the function in question." *Id.* at 486.

When the administrative process was underway and when this lawsuit was filed, the portion of the Indiana Administrative Code (IAC) addressing the BSEA was Title 511, Article 7, Rule 30, Section 104.[2] The IAC sets out the BSEA's duties and responsibilities, standard of review, obligations, and limits:

> The board, in conducting an impartial review, shall review the entire record of the due process hearing to ensure the procedures of the hearing were consistent with the requirements of section 3 of this rule. The board may decide the matter with or without oral argument. The board shall not disturb the findings of fact, conclusions of law, or orders of the independent hearing officer unless the board finds the independent hearing officer's decision to be one (1) or more of the following:
> (1) Arbitrary or capricious.
> (2) An abuse of discretion.
> (3) Contrary to law, contrary to a constitutional right, power, privilege, or immunity.
> (4) In excess [of] the jurisdiction of the independent hearing officer.
> (5) Reached in violation of an established procedure.
> (6) Unsupported by substantial evidence.

511 IAC 7-30-4(j). The administrative code also shows that the BSEA is undertaking a quasi-judicial activity. For example, it may hear oral argument, parties may be represented by counsel, there is time for argument and rebuttal, the BSEA may ask questions of persons at the hearing, and it may exercise the powers of the independent hearing officer. 511 IAC 7-30-4(l). When the board has made its decision, it will:

> prepare an independent written decision that:
> (1) contains findings of fact, conclusions of law, and, if necessary, orders; and

---

[2] That Rule was repealed on July 14, 2008. The new version of the IAC dealing with the BSEA, 511 IAC 7-45-9, is substantively the same for purposes of this case, but the Court will use the IAC version that was in effect at the time this case occurred in the administrative process and in federal court.

    (2) includes a notice of the following:
      (A) The right to seek judicial review of the board's decision.
      (B) A party has thirty (30) calendar days from the date the party
      receives the board's written decision in which to seek judicial
      review.
      (C) An action for attorney's fees must be filed in a civil court with
      jurisdiction within thirty (30) calendar days after receipt of the
      board's final decision if no request for judicial review is filed in
      federal or state civil court.
      (D) The decision of the board is a final order unless judicial review in federal or
      state civil court is sought.

511 IAC 7-30-4(m). All of these quasi-judicial functions are the type that subject the officials performing them "to the same obvious risk of entanglement in vexatious litigation as is characteristic of the judicial process," *Mother Goose*, 770 F.2d at 671, including "the possibility that losers will bring suit against the decision-makers in an effort to relitigate the underlying conflict and charg[e] the participants in the first with unconstitutional animus," *id.* Of course, this lawsuit is an example of the possibility warned of in that passage. *See also Tobin*, 268 F.3d at 522 (describing similar quasi-judicial activities for members of the Illinois State Board of Elections, which was granted quasi-judicial immunity). In *Tobin*, the court noted that the board's "task of determining the validity of nomination petitions is likely to be controversial and to come under intense political scrutiny. To protect the integrity of the electoral process, it is necessary to protect the board members from harassment and intimidation so that they can exercise their independent judgment." 268 F.3d at 522. Likewise, the BSEA's task of deciding the education rights of students is controversial, so to protect the integrity of the education process, it is necessary to protect the board and its members from litigation-related harassment and intimidation so they can exercise their independent judgment. The BSEA process spelled out in the Code, as well as the ability for parties to use counsel, shows "the adversary nature of the

9

process." *Mother Goose*, 770 F.2d at 673.

The IAC governing the BSEA also makes clear that its members "are subject to checks upon abuses of authority, such as the correction of error on appeal," *id.* at 671, and that there is "the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct . . . and the correctability of error on appeal." *Cleavinger*, 474 U.S. at 202. Most importantly, final decisions of the BSEA are appealable to federal court, 511 IAC 7-30-4(m), (n), so any abuse or mistake may be corrected. Another check or safeguard is the "stay put" provisions of IDEA, 20 U.S.C. § 1415(j), and the IAC, 511 IAC 7-30-3(j)[3], which requires that the student stays in the same educational setting until the dispute is resolved. "The Supreme Court has described the purpose of the 'stay-put' provision of the IDEA as one of preventing 'school officials from removing a child from the regular public school class room over the parents' objection pending completion of the review proceedings.'" *Monticello Sch. Dist. No. 25 v. George L.*, 102 F.3d 895, 905 (7th Cir. 1996) (quoting *Burlington Sch. Comm. v. Mass. Dep't of Educ.*, 471 U.S. 359, 371 (1985)).

The setup of the BSEA indicates that it will be insulated from political influence. *Cleavinger*, 474 U.S. at 202. The state superintendent of public instruction appoints each of the three board members for a three-year term, "with the year of appointment alternating to preclude all three (3) members being appointed at once." 511 IAC 7-30-4(a). The members alternate as the chair when reviewing a case, and the members "(1) may not be an officer, employee, or agent of a public agency involved in the education or care of a student; (2) may not have any personal

---

[3] The provision states in part: "Except as provided in 511 IAC 7-29-3 and 511 IAC 7-29-7, the student shall remain in the student's current educational placement during a due process hearing, administrative appeal, or judicial proceeding, unless the parties agree otherwise." IAC 7-30-3(j).

or professional interest that conflicts with the member's objectivity in the appeal process; and (3) must be a resident of Indiana." *Id.*

It is true that the BSEA is a statutory creation and so it does not have a common-law history of immunity, but that was also the case with the Illinois State Board of Elections in *Tobin*. 268 F.3d at 524. The Seventh Circuit indicated that the lack of that one factor did not prevent quasi-judicial immunity status. *Id.* Also, the Court is not necessarily describing this lawsuit as an example of "vexatious litigation," because such a finding is not necessary to compare the *Mother Goose* factors to this case. *See Tobin*, 268 F.3d at 524 ("[A]bsolute immunity is available to quasi-judicial officers because the threat of being subjected to *any* litigation impedes the officers' ability to engage in independent and fearless decision-making."). Finally, after reviewing the Seventh Circuit cases addressing quasi judicial immunity, as discussed above, the Court concludes that the BSEA's conduct reviewing special education appeals from hearing officers "falls within the heartland of what these cases have established as quasi-judicial adjudicatory functions." *Tobin*, 268 F.3d at 524.

In sum, the Court concludes that the BSEA is entitled to absolute quasi-judicial immunity from suit, including the remaining claims lodged against it in this case. As a result, the claims in paragraphs 10 and 11 of the Amended Complaint—which dealt only with the BSEA (and not the other State Defendants) and its alleged practice of ruling for schools and against students and their parents—will be dismissed. The BSEA also will be dismissed from the case. As a result, there is no need to consider the merits of the claims against the BSEA in paragraphs 10 and 11 of the Amended Complaint. That leaves the remaining claim in paragraph 48 against all the remaining State Defendants, the Department of Education and the Board of Education.

**B.     Claim that the State Defendants Violated IDEA's Requirement for Fair Hearings in Light of the BSEA's Criticisms of the IHO**

This claim against the remaining State Defendants[4] posits that the State of Indiana's hearing system for IDEA complaints is unfair in light of the BSEA's criticism of how the IHO handled the Plaintiffs' original complaint. The theory seems to be that if the BSEA is correct in its criticism, then the mistake-ridden hearing process deprived the Plaintiffs of due process and their rights under IDEA.

More specifically, the Plaintiffs argue that the IHO's errors, as set out by the BSEA, resulted in procedural violations of IDEA, in particular the standard for the independent hearing officer in 20 U.S.C. § 1415(f)(3)(A)(ii)–(iv).[5] (Pls. Mem. in Support 13–17; Pls. Brief in Opp. 4.) "If the Court finds that the evidentiary hearing process before IHO McKinney or the BSEA process was procedurally contrary to the IDEA and Article 7 [of the IAC], then the Court must find that M.O.'s right to a [free appropriate public education] has been violated and provide him relief and/or reinstate McKinney's Order." (Pls. Mem. in Support 14.) "M.O. and his parents had the absolute right to expect that any hearing officer assigned by the Department of Education

---

[4] The following analysis of the remaining claim is an alternative basis for dismissing the BSEA in the event that it is later determined that the BSEA is not entitled to quasi-judicial immunity.

[5] That provision states:
A hearing officer conducting a hearing pursuant to paragraph (1)(A) shall, at a minimum
. . . .
    (ii) possess knowledge of, and the ability to understand, the provisions of this chapter, Federal and State regulations pertaining to this chapter, and legal interpretations of this chapter by Federal and State courts;
    (iii) possess the knowledge and ability to conduct hearings in accordance with appropriate, standard legal practice; and
    (iv) possess the knowledge and ability to render and write decisions in accordance with appropriate, standard legal practice.
20 U.S.C. § 1415(f)(3)(A).

would be qualified consistent with the IDEA requirements. If, as the School contends, the IHO did not meet the legal standards required by the IDEA, then the parents are entitled to a judgment in their favor, or at least a remand before a qualified hearing officer." (*Id.* at 16.)

The BSEA found that the IHO committed numerous errors in the substance and procedure of the hearing process. These errors were described in the numbered paragraphs in the BSEA's Combined Findings of Fact and Conclusions of Law. (DE 10-2 at 22–30):

- The IHO should not have bifurcated the proceedings into an expedited portion and a regular portion, and this problem resulted in confusin about when the parties should have filed their appeal with the BSEA. (¶¶ 3, 6, DE 10-2 at 23, 24.)
- The IHO failed to rule on objections to the admissibility of documents and testimony in a timely way or at all. (¶ 4, DE 10-2 at 23.)
- The IHO missed his own deadline to issue his decision several times and inappropriately contacted the parties in *ex parte* communication to request more time. (¶ 5, DE 10-2 at 24.)
- The IHO's "written decision does contain factual and legal determinations that are not supported by the record or by law. In some instances, relevant facts are ignored while irrelevant facts are not. In others, legal standards are employed either incorrectly or not at all. There is little support of the IHO's legal conclusions and no support for his Orders." (¶ 7, DE 10-2 at 24.)
- The IHO "often relied on statements from witnesses who had no first-hand knowledge[] [and] acknowledged they had no first-hand knowledge, but ignored witnesses who did have first-hand knowledge." (¶ 9, DE 10-2 at 25.)

The BSEA went on to reverse the IHO's orders.

There are two main problems with the Plaintiffs claims: a lack of evidence about the systemic nature of the allegations and caselaw in this circuit regarding procedural violations of the IDEA.[6]

---

[6] There is also a problem with the logical implications of this claim. The way the Plaintiffs has framed the claim in Paragraph 48 of their Amended Complaint results in a no-lose situation for the Plaintiffs. The Plaintiffs ask the Court to "[r]everse the BSEA's decision and reinstate the full decision and relief awarded by the IHO McKinney." (Am. Compl. 15.) Yet, the Plaintiffs also state that if the BSEA's decision (including the portions about the IHO's errors) is affirmed by this Court, "then M.O. did not receive a fair hearing as he was denied a hearing officer with 'knowledge and ability' to conduct the hearing as the IDEA requires. If that is true, then the State Defendants should not have appointed him again -- especially on the same child's case." (Pls. Br. in Opp. 5.) The Plaintiffs explain it more explicitly in other filings: "If the Court finds that the evidentiary hearing process before

1.  *The Evidence Required for the Plaintiffs to Create a Genuine Issue of Material Fact Regarding Their Claim about Allegedly Unfair Due Process Hearings*

The first and most important problem with the Plaintiffs' systemic claim is the lack of evidence creating a genuine issue of material fact about the State of Indiana's allegedly flawed administrative hearings. The Plaintiffs face an uphill battle trying to make a claim about the entire State of Indiana's due process hearing system based on one student's experience, however many errors or procedural violations took place.

The Plaintiffs state that in the case of this particular IHO, "there were complaints as early as 1997 as to the manner in which he conducted a hearing." (Pls. Br. in Opp. 9.) But in that same case, the Plaintiffs state, "the BSEA held that [IHO] McKinney's handling of the hearing process was sufficient at that time." (*Id.*) One case with complaints about the IHO is not enough evidence to raise a genuine issue of material fact, especially when the decision was ultimately affirmed. There is no evidence of a later determination by a federal court that the IHO's errors were procedural violations that resulted in a loss of educational opportunity.

The Plaintiffs attached to their Brief in Opposition nearly 900 pages of BSEA decisions and stated: "In the 98 decisions considered by the BSEA, the BSEA noted violations of hearing procedures in numerous cases, particularly those where the BSEA reversed in favor of the school corporation but winked at similar procedures when parents contended those to be of issue on

---

IHO McKinney or the BSEA process was procedurally contrary to the IDEA and Article 7, then the Court must find that M.O.'s right to a FAPE has been violated and provide him relief and/or reinstate McKinney's Order." (Pls. Mem. in Supp. 14.) The IHO and the BSEA came to opposite conclusions. If the Court rules that one was right, that means the other was wrong. But the way the Plaintiffs has argued, either ruling by the Court entitles the Plaintiffs to the relief they seek. A claim where a party wins no matter how the court rules is too good to be true, so it probably is not true. As explained in Part A.3., *supra*, affirming the BSEA (if that is indeed what this Court eventually does) would not mean the Court is also making a finding that the Plaintiffs' rights were violated because they did not receive a fair hearing without procedural violations. The procedural violations had no effect on Plaintiff M.O.'s education opportunity.

their appeal." (*Id.* at 11.) This too is insufficient to raise a genuine issue of material fact in response to the Defendants' Motion for Summary Judgment. Once again, there is no evidence that these alleged violations of hearing procedures resulted in a loss of educational opportunity. Also, such a general, vague suggestion for the Court to review nearly 900 pages of documents, without pinpoint citations or specific case names, violates Local Rule 56.1(a). That rule requires the party opposing summary judgment, the Plaintiffs at this moment, to "include in or append to its response "a 'Statement of Genuine Issues' setting forth, *with appropriate citations* to . . . admissible evidence, all material facts as to which it is contended there exists a genuine issue necessary to be litigated." *Id.* The Plaintiffs' Response Brief lacks any (let alone appropriate) citation to BSEA cases that purportedly found procedural violations. *See Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir. 1996) ("It is not our function to scour the record in search of evidence to defeat a motion for summary judgment; we rely on the nonmoving party to identify with reasonable particularity the evidence upon which he relies."). The Court finds that the Plaintiffs have not presented sufficient evidence for a fact finder to conclude that the Sate of Indiana fails to satisfy procedural safeguards of students in the way it appoints IHOs and conducts its hearings.

Even if the Plaintiffs were able to present such evidence in general and in a way that complies with Local Rule 56.1(a), it is doubtful that it would be sufficient to raise a genuine issue of material fact in response to the Defendants' Motion for Summary Judgment on the claim that the administrative hearings are unfair due to errors and violations. To raise a genuine issue of material fact for the claim that the due process hearings are systemically unfair, the Plaintiffs would need many, many cases where there were not only procedural violations and errors, but

15

those also resulted in a loss of educational opportunity and deprived a student of a free appropriate public education. *Ross*, 486 F.3d at 276. Such a finding means that each of these cases with errors and violations would have had to have been appealed to federal court, and that then the courts would have had to have agreed with the Plaintiffs' view that the errors and violations resulted in a loss of educational opportunity and deprived a student of a free appropriate public education. That seems unlikely given that this Court found only four IDEA cases in this circuit involving procedural violations, and the Seventh Circuit found the procedural violation to be non-minor in only one of those cases, *see* Part B.2., *infra*.

### 2. *Seventh Circuit Precedent Regarding IDEA Procedural Violations*

The second problem with the Plaintiffs' argument is that it is not supported by caselaw in this circuit. The proper standard for evaluating procedural violations is whether they "result in the loss of education opportunity." *Bd. of Educ. of Tp. High Sch. Dist. No. 211 v. Ross*, 486 F.3d 267, 276 (7th Cir. 2007). If they do, then a student has been denied a free public education (FAPE). *Id.* Normally, a court conducts this analysis when examining the student's educational status during summary judgment involving the school defendants. The Court is addressing this issue now because it is relevant to the Plaintiffs' systemic claims about the hearings whether the Plaintiffs' hearing itself was so procedurally flawed that the Plaintiffs' rights were violated.[7]

None of the caselaw cited by the Plaintiffs on pages 14 and 15 of their Brief in Support

---

[7] The Court's conclusion about this issue here does not necessarily dictate a similar finding in the Court's eventual ruling on the School Defendants' and Plaintiffs' cross-motions for summary judgment.

of Plaintiffs' Motion for Summary Judgment[8] supports her view because the problems and errors the Plaintiffs complain about in this case are nothing like the severe delays in holding a due process hearing or issuing a decision in *Blackman v. District of Columbia*, 382 F. Supp. 2d 3, 9 (D.D.C. 2005) or *Engwiller v. Pine Plains Central School District*, 110 F. Supp. 2d 236 (S.D.N.Y. 2000). The third cases cited for this proposition, *J.R. v. Sylvan Union Sch. Dist.*, No. S-06-2136, 2008 WL 2345103 (E.D. Cal. June 5, 2008), remanded the case to the administrative judge because the administrative record was lacking important information (a full transcript of testimony by key witnesses), thus depriving the court of a sufficient basis to rule on the case. There is no suggestions or claim in this case that the administrative record provided to the Court is insufficient for the Court to make a ruling.

The Seventh Circuit has found that procedural violations involving participating in forming the IEP do not result in a loss of education opportunity or a free appropriate public education. *Ross*, 486 F.3d at 276; *Hjortness ex rel. Hjortness v. Neenah Joint Sch. Dist.*, 507 F.3d 1060, 1065 (7th Cir. 2007); *Evanston Cmty. Consol. Sch. Dist. Number 65 v. Michael M.*, 356 F.3d 798, 804 (7th Cir. 2004). In *Heather S. v. State of Wisconsin*, 125 F.3d 1045 (7th Cir. 1997), the Seventh Circuit found that a procedural violation in waiting too long to issue a decision did not result in the loss of educational opportunity for several reasons. First, each hearing and decision throughout the case ruled against the student and for the school. So ultimately, any procedural violations did not matter to her educational status. *Id.* at 1059. Second, the parents enrolled the student in a private school before the decision was rendered. *Id.* at 1060. The court also noted that while the student's case exceeded the regulatory timeline, the

---

[8] The Plaintiffs do not cite legal authority for their argument on this issue in their Opposition to the Defendants' Motion for Summary Judgment. (*See* Pls. Response In Opp. 3–6, DE 71.)

delay was in large part due to the parent's numerous objections and filings, which created a large administrative record. *Id.* at 1059. The Seventh Circuit contrasted those minor violations involving Wisconsin time limits for administrative action with a serious procedural violation in *Michael M.* The problem in this case was "a violation involving the qualifications of the school personnel who are providing the services. Failure to follow the state's requirements for licensing occupational therapists, as set out in 225 ILCS 75/3(6)(I), is different from a minor procedural violation." 356 F.3d at 803 (affirming an order for compensatory occupational services after noting that it was a close question).

In this case, the Court must first distinguish between the IHO's "regular" errors and those errors that could be considered procedural violations, an issue that the parties did not address. The failure to rule on the admissibility of evidence and the erroneous factual and legal determinations cannot be considered procedural violations of the IDEA. Federal courts examine hearing officer ruling errors when addressing the substantive educational rights of the student, but they do not examine them for the purpose of determining if ruling errors in and of themselves constitute a separate violation of IDEA. The Plaintiffs have not provided any examples of cases to support this idea. On the other hand, bifurcating the proceeding, the resulting confusion about appeal deadlines, and repeatedly failing to issue a decision on time could be considered to be procedural violations. However, in light of the caselaw in this circuit, the Court for two reasons cannot say that these procedural violations resulted in a loss of education opportunity, thus depriving Plaintiff M.O. of a free appropriate public education.

First, the procedural posture of the case means that any procedural violations did not harm Plaintiff M.O.'s education opportunities. The IHO ruled for the Plaintiffs, so his procedural

violations did not result in any adverse ruling at that level. The Plaintiffs concede as much: "[A]lthough the BSEA criticized the IHO for certain procedural failings, those were not tired to the actual substantive decision made overall." (Pls. Br. in Supp. 17.) In other words, the Plaintiffs admit that the errors and/or procedural violations did not have any effect on the educational opportunities of Plaintiff M.O. Also, the BSEA ruled against the Plaintiffs, so ultimately the procedural violations did not matter. *Heather S.*, 125 F.3d 1059–60. In addition, the BSEA noted that neither party objected to the bifurcation, and both parties agreed to the extensions sought by the IHO. *Cf. Heather S.*, 125 F.3d at 1059–60 (noting that the parents' role in the procedural delays is a factor in finding that there was no loss of education opportunity).

Second, these procedural violations—wrongly bifurcating the proceeding, confusing appellate deadlines, and a delay in issuing the decision—fall into the category of minor flaws involving timing and involvement of the parties in *Ross*, *Hjortness*, *Michael M.*, and *Heather S.* They are much less significant and not at all like the serious violation in *Michael M.*, where students were receiving care from therapists whose licensing did not follow state requirements.

Therefore, the record is clear that the minor procedural violations did not result in a loss of education opportunity for Plaintiff M.O. or deprive him of a free appropriate public education.

## CONCLUSION

In conclusion, the Defendants are entitled to summary judgment on the Plaintiffs' remaining claim that Indiana's administrative hearing system is unfair in light of the errors committed by the IHO in this case. Because the Plaintiffs have failed to produce evidence that raises a genuine issue of material fact regarding their claims in response to the Defendants'

Motion for Summary Judgment, the Plaintiffs have also fallen far short of the hurdle they face with their own Motion for Summary Judgment, where they must show that they are entitled to judgment as a matter of law. *See McKinney*, 548 F.3d at 505 n.4 (stating that, because the plaintiff did not present any evidence in support of her claim, she failed to carry her burden and "[o]ur conclusion in this regard encompasses both McKinney's burden on her own motion for summary judgment as well as her responsive burden in connection with Cadleway's cross-motion for summary judgment"); *see also Ryan v. Chromalloy Am. Corp.*, 877 F.2d 598, 603 (7th Cir. 1989) (stating that even if plaintiffs filed their own motion for summary judgment, that does "not relieve them of their burden as the nonmovants relative to the defendant's motion for summary judgment").

Therefore, the Court GRANTS School Defendants' Motion for Summary Judgment [DE 53] and DENIES the Plaintiffs' Motion for Summary Judgment Against State Defendants [DE 46]. All of the State Defendants are DISMISSED from this case. The School Defendants remain in the case.

SO ORDERED on March 31, 2009.

    s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT
FORT WAYNE DIVISION