UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| M.O., by his parents and next friends, C.O. and L.O., ) ) ) Plaintiffs, ) ) v. ) ) DUNELAND SCHOOL CORPORATION, and ) PORTER COUNTY EDUCATION SERVICES, ) ) Defendants. ) | CASE NO. 2:07-CV-175-TS |

**OPINION AND ORDER**

This matter is before the Court on three motions pending in this cause of action. Cross-Motions for Summary Judgment have been filed by the Defendants, Duneland School Corporation, and Porter Education Services, [DE 36], and the Plaintiffs [DE 47], on April 24, 2008, and July 8, 2008, respectively. Additionally, the Defendants' March 20, 2009, Motion to Consider Additional Evidence [DE 88] has yet to be ruled on. However, based on recent developments, the Court finds that it no longer has subject matter jurisdiction over the case, and will dismiss it as moot.

**BACKGROUND**

This matter was filed before the Court on June 1, 2007, as a judicial review of an administrative hearing held under the Individuals with Disabilities Education Act (IDEA) concerning the provision of special education for M.O. The following facts are uncontested by the parties.

M.O. and his family moved into the Duneland School Corporation (Duneland) on August

24, 2006. He enrolled at Chesterton High School (the School) the next day, and began taking classes. M.O. did not enroll as a special education student. After less than one month in school, M.O. was involved in a serious physical altercation with another student that involved punching and choking. Due to this misconduct, Duneland moved to expel M.O. on September 22.

Shortly after the expulsion recommendation, the parents invoked several IDEA procedures. On September 27, the parents requested an evaluation of M.O. through an expedited evaluation. On September 29, the parents filed a request for an administrative hearing, which was held on October 5. After the hearing, the independent hearing officer (IHO) issued an interim order on October 9, finding that the school knew or should have known that M.O. had a disability and ordered the school to commence homebound instruction services. The IHO issued a final order on this portion of the hearing request on October 12.

The School then commenced a complete educational evaluation of M.O., and held a case conference committee (CCC) meeting on October 20. The CCC found M.O. eligible for special education and related services as a student with an emotional disability (ED). The CCC then developed an individualized education plan (IEP) for M.O. The IEP offered counseling services and emphasized the benefits of M.O. working through his negative feelings about school so that he could be successfully reintegrated into the School.

On November 4, the School made a request to the IHO to add two issues to the hearing: (1) whether the School's October 20, 2006 proposed IEP was appropriate for M.O.; and (2) which placement would be the least restrictive for M.O. The hearing on these issues occurred on December 12 and 13, and on January 30, 2007. The IHO's decision, issued on February 26, ordered the School to offer M.O. two alternatives. M.O. could either continue his homebound

program to proceed through his coursework at his own pace, or have the CCC provide him with an IEP calling for a homebound placement but permitting M.O. to take courses through the Indiana University High School (IUHS) program.

A CCC meeting was held on March 20, 2007, regarding how to implement the February 26 ruling. At that point, the parents chose the homebound alternative. As part of this alternative, the School was required to provide to M.O. eight two-hour sessions of academic tutoring, and one forty-five minute session of affective counseling each week. In April, the parents informed the School that they were declining counseling services.

The School appealed the February 26 IHO decision to the Indiana Board of Special Educational Appeals (BSEA). The BSEA issued its decision on May 4, 2007, which substantially amended a number of findings of fact and reversed several conclusions of law of the February 26 decision. The BSEA found that the School's proposed October 20, 2006, IEP was procedurally valid and substantively appropriate to address M.O.'s needs. On June 1, 2007, the Plaintiffs filed their Complaint [DE 1] with this Court seeking review of the administrative decision.

On September 26, the parents notified the School that they wanted M.O. to remain in the stay-put placement of the IUHS online program. On March 3, 2008, the CCC met to discuss M.O.'s need to earn credits to graduate with a diploma from the IUHS program. The School recommended to the parents that M.O. attempt to transition back to the School, and the parents acquiesced.

After a school year went by, the School held a case conference on May 26, 2009, to develop a new IEP for M.O. to address completing his education with a high school diploma. At

3

that case conference, the parents informed the School that they were moving from Duneland to the Penn-Harris-Madison School Corporation. After his transfer to Penn High School, M.O. obtained the five remaining credits he needed to obtain his high school diploma.

On August 10, 2009, this Court held a status conference with the parties for the purposes of discussing issues of mootness in the case (now that M.O. has obtained a high school degree from another school district), as well as to discuss the Supreme Court's ruling in *Forest Grove v. T.S.*, 129 S.Ct. 2484 (2009). The Court ordered supplemental briefing on these issues, which was timely filed by the parties on October 13. The Court is now ready to rule on the issue of mootness, and will find, for the reasons stated herein, that it lacks subject matter jurisdiction to proceed with this case.

## MOOTNESS STANDARD

Article III, § 2 of the Constitution grants jurisdiction to federal courts to adjudicate only "actual, ongoing controversies." *See Honig v. Doe*, 484 U.S. 305, 317 (1988). For a cause to be justiciable, a live controversy must continue to exist at all stages of review, not simply on the date the action was initiated. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–78 (1990); *Jordan by & through Jones v. Ind. High Sch. Athletic Ass'n, Inc.,* 16 F.3d 785, 787 (7th Cir. 1994). A case becomes moot when a court's decision can no longer affect the rights of litigants in the case and would simply be "an opinion advising what the law would be upon a hypothetical set of facts." *North Carolina v. Rice*, 404 U.S. 244 (1971) (internal quotations omitted). In an action seeking only injunctive relief, this requirement ordinarily means that, once the threat of the act sought to be enjoined dissipates, the suit must be dismissed as moot. *See, e.g., Wernsing v.*

4

*Thompson*, 423 F.3d 732, 744–45 (7th Cir. 2005). If, however, a plaintiff also seeks monetary damages, his case is not moot even if the underlying misconduct that caused the injury has ceased. *See, e.g., Crue v. Aiken,* 370 F.3d 668, 677–78 (7th Cir. 2004) ("When a claim for injunctive relief is barred but a claim for damages remains, a declaratory judgment as a predicate to a damages award can survive.").

**DISCUSSION**

The Plaintiffs' original Complaint, filed before M.O. had received his high school degree, asked this Court for relief that included: (1) reversing the BSEA decision and reinstating the full decision and relief awarded by the IHO; (2) ordering that M.O.'s "stay put" program of education throughout the dispute be the homebound program; (3) requiring Duneland and Porter County to pay for an independent and full evaluation of M.O., including any medical diagnostic information as to the headaches, and to create a new IEP to meet M.O.'s needs; (4) any and all other appropriate relief under the circumstances. Now that M.O. has received his degree and all injunctive relief is moot, the Plaintiffs have limited the relief sought in this Court to two forms: (1) reimbursement for the costs of an Independent Educational Evaluation (IEE) conducted by Dr. Hudson and the costs of counseling services; and (2) compensatory damages for the 2006–2007 school year during which the School Defendants knew of M.O.'s migraine headaches and did not plan for them in his IEP. (Pl. Resp. Brief, DE 101). This Section of the Opinion will establish the law of compensatory damages in IDEA cases, including analysis on the *Forest Grove* decision. It will then address the claim for damages.

Until the publication of *Forest Grove*, both parties relied on the seminal case of *Brown v.*

*Bartholomew Consolidated School Corporation*, 442 F.3d 588 (7th Cir. 2006). *Brown* stands for this proposition:

> Relief in the form of reimbursement for out-of-pocket educational expenses, or "compensatory education" as it is formally called, is as we [have] said, indeed exceptional and nowhere expressly authorized by statute. The IDEA only authorizes a district court to award aggrieved parents such relief as the court determines is appropriate. Consistent with the Supreme Court's reading of this provision . . . courts have held that a district court's authority encompasses a range of equitable remedies and therefore empowers a court to order . . . compensatory education if necessary to cure a violation. However, as an equitable remedy, awarding compensatory education is a decision that rests in the sound discretion of the district court.

(internal citations omitted). *Id.* at 597–98.

The Seventh Circuit's Opinion in *Evanston Community Consolidated School District Number 65 v. Michael M.*, 356 F.3d 798,(7th Cir. 2004), further explicates when a district court is permitted to consider compensatory damages in IDEA cases. In order for a court to consider such a remedy, the alleged violation must be more than "procedural." *Id.* at 803. In that case, the court awarded compensatory damages to parents whose child was treated by occupational therapists who were not properly certified by the state, and whose incompetence denied the child a Free and Public Education (FAPE). Even then, the Court called the compensatory education remedy "a close question." *Id.*

Indeed, "[a]ppropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the IDEA." *Parents of Student W. v. Puyallap Sch. Dist. No. 3*, 31 F.3d 1489, 1497 (9th Cir. 1994). In that case, the parents of Student W. pursued a compensatory damages claim because their child, who ultimately received his degree, had been deprived of one-and-a-half years of special education services because of an improper IEP. In denying the claim the court stated that "Student W. was able to graduate from high school,

before reaching age 21, without more services than provided for in his annual IEP. The IDEA promises him no more." *Id.*

In other words, applicable precedential authority all points to the conclusion that the award of *any* damages, including compensatory damages, depends on the threshold question of whether the child's IEP, however imperfect, led to the child's being denied a FAPE. *See also C.M. v. Bd. of Educ.*, 128 Fed. Appx. 876, 881 (3rd Cir. 2005) ("[O]nly those procedural violations of the IDEA [that] result in loss of educational opportunity or seriously deprive parents of their participation rights are actionable."); *Roland M. v. Concord Sch. Comm.*, 910 F.2d 983, 994 (1st Cir. 1990) ("[P]rocedural flaws do not automatically render an IEP legally defective. Before an IEP is set aside, there must be some rational basis to believe that procedural inadequacies compromised the pupil's right to an appropriate education, seriously hampered the parents' opportunity to participate in the formulation process, or caused a deprivation of educational benefits."); *Burke County Bd. of Educ. v. Denton*, 895 F.2d 973, 982 (holding that "where [a child] has benefitted educationally from the instruction provided under the Board's IEP . . . Federal law requires no more.").

Analyzing this case in light of the aforementioned law leads to the conclusion that the entirety of the case is moot, and that the Plaintiffs are not entitled to any compensatory damages. As M.O. timely received his high school diploma, the Plaintiffs cannot make a case that any inadequacy in the IEP hampered his right to receive a FAPE. Therefore, any such inadequacy is deemed to be a "procedural inadequacy," which did not result in a "loss of educational opportunity."

Nor can the Plaintiffs seek recourse in the exception to the mootness doctrine for

"wrongs capable of repetition, yet evading review." *See Honig v. Doe*, 484 U.S. 305, 317 (1988) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). This exception, which applies only in "exceptional situations," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998), saves a case from being moot when "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy*, 455 U.S. at 482. Because IEP challenges usually endure longer than the nine-month school year, most circuits hold that the first, durational element of the mootness exception is satisfied in these cases. *Brown*, 442 F.3d at 599 (citing *Rome Sch. Comm. v. Mrs. B.*, 247 F.3d 29, 31 (1st Cir. 2001)).

In this case, as M.O. completed his high school education prior to the case's completion, there is no doubt that the first prong has been met. Therefore the Court must decide whether there is a reasonable expectation that M.O. would be subjected to this action again. The case at bar largely conforms to the facts of *Downers Grove Grade School Number 58 Board v. Steven L.*, 89 F.3d 464 (7th Cir. 1996), cited approvingly in *Brown.* In that case, a district court did *not* dismiss the Plaintiff's case as moot, as it wished to resolve "conflicting educational philosophies and perceptions of the mainstreaming and methodical requirements under the IDEA." *Id.* at 467. However, the Seventh Circuit reversed, finding that since the student was no longer in the school district, he was "without an actual injury traceable to the defendant that could be redressed by a favorable judicial decision." *Id.* Since the IEP in question was a "circumstance long gone," *id,* there was no injury capable of repetition yet evading review.

The conclusion that this case is moot under *Brown* is largely undisputed by the parties, as the Plaintiffs admitted, "[d]uring the course of this litigation . . . the parents believed the

Court's ability to award relief might be limited by a Seventh Circuit case, *Brown* . . . ." (Pl. Supp. Brief, DE 99 at 5). However, the Plaintiffs ask this Court to read the *Forest Grove* opinion as now allowing the type of relief they seek.

The Plaintiffs' reasoning relies on language in *Forest Grove* that Courts are given "broad authority to grant 'appropriate' relief." *Forest Grove*, 129 S.Ct. at 2492. They read the language as overturning *Brown*, and allowing the type of compensatory relief they seek. However, this language is not new to *Forest Grove*—it merely echoes the language in *Brown*, *Student W.*, and nearly every other case that has arisen under the IDEA. In fact, the Supreme Court in *Forest Grove* explicitly states that the decision is *not* meant to abrogate previous interpretations of "appropriate relief" *Id. Forest Grove* merely addresses the 1997 amendment to the IDEA that deals with reimbursement for parents who enroll their children in private school during the pendency of an IDEA proceeding. *Id.* at 2496 ("Parents are entitled to reimbursement *only* if a federal court concludes both that the public placement violated IDEA and the private school placement was proper under the Act.") (internal citation omitted) (emphasis in original). The facts of this case plainly do not conform to those in *Forest Grove*, and *Forest Grove* is plainly limited to its facts ("we do not read [the amendment] to alter the [appropriate relief] provision's meaning."). *Id.* Therefore, *Brown* remains good law. The Plaintiff has not pointed to any other provision authorizing reimbursement for the IEE.

Since the Court cannot address the issue of compensatory damages in this case, and all injunctive issues have been settled outside of court, there is no longer a "live case or controversy" for the Court to address at this stage of review. Mindful that "[a]ppropriate relief is relief designed to ensure that the student is appropriately educated within the meaning of the

9

IDEA," the Court finds that a ruling on this case would indeed be "an opinion advising what the law would be upon a hypothetical set of facts." As M.O. has received the FAPE guaranteed to him by the IDEA, the Court will dismiss this case for lack of subject matter jurisdiction.

## CONCLUSION

For the reasons stated, the Court finds that it lacks subject matter jurisdiction over this case, for mootness. The Cross-Motions for Summary Judgment [DE 36, 47] are DENIED as MOOT. The Motion to Consider Additional Evidence [DE 88] is DENIED as MOOT. The cause of action is DISMISSED as MOOT.

SO ORDERED October 29, 2009.

                                                     s/ Theresa L. Springmann
                                                  THERESA L. SPRINGMANN
                                                  UNITED STATES DISTRICT COURT